## ALMEDA HAYES v. COMMONWEALTH LIFE INS. CO.

Middle Section. June 9, 1928.

No petition for Certiorari was filed.

W. C. Cherry and Jno. W. Hilldrop, of Nashville, for appellant.
Keeble, Seay, Stockell and Keeble, of Nashville, for appellee.

SENTER, J. This suit is to recover on a life insurance policy issued by the defendant, Commonwealth Life Insurance Company, on the life of Daniel D. Hayes. The policy sued on is for the sum of $435, naming the complainant, Almeda Hayes, as beneficiary.

The application for this insurance policy was signed by the deceased, Daniel D. Hayes, and contained the following statement or provision:

"The undersigned hereby declares and warrants that the representations and answers made above are strictly correct and wholly true; that they shall form the basis and become a part of the contract of insurance (if one be issued); that any untrue answers will render the policy null and void, and that

said contract shall not be binding upon the company unless upon its date and delivery the insured be alive and in sound health."

It appears that the policy of insurance issued on the life of Daniel D. Hayes, and sued on, contains the following provision:

"No obligations are assumed by this company prior to the date of delivery of this policy, nor unless at the time of said delivery the assured is alive and in sound health."

It appears that the application was signed in Nashville on January 18, 1926, and the policy was issued on February 1, 1926, and delivered to the insured at Nashville and the first premium paid. At the time the application was given by Hayes for the insurance, he was afflicted with tuberculosis. At the time of the signing of the application, Hayes knew that he had this disease, and sometime prior thereto had applied for admittance to the Davidson County Tuberculosis Hospital for treatment. Before entering the institution for treatment, his condition improved, and he then decided that he would not go to the hospital for treatment but secured employment as a waiter in a restaurant.

A short time before the soliciting agent of defendant took the application of Hayes, he had visited the home of Hayes to solicit insurance upon members of the family, and at that time inquired of Mrs. Hayes, wife of Daniel Hayes, where her husband could be found. She gave the information desired, and at the same time voluntarily stated to the agent that her husband had tuberculosis. Later, this same soliciting agent of defendant, Yount, in company with the assistant superintendent, and occupying a higher position than Yount, a Mr. Bragg, went to the restaurant where Hayes was employed as a waiter, for the purpose of soliciting the application for insurance on the life of Hayes. It appears that these two agents of the defendant ordered lunch at the restaurant, and while the lunch was being served by Hayes, they solicited the application, and Hayes then stated to these agents of defendant that he had tuberculosis and did not think he could obtain insurance. It appears that both Yount and his superior, Bragg, then said to Hayes that they thought they could get his application through. This was insurance known as the industrial plan, and did not require a medical examination. After stating to Hayes that they thought he was insurable, and while in full possession of Hayes real condition, the assistant superintendent, Bragg, asked Hayes a few questions with reference to his age, age of his parents, residence, etc., and then handed deceased an application, which deceased signed without reading. The deceased was then very busy with his duties as waiter, as this was at the usual lunch hour. The answers were

not read over to Hayes; Bragg, the assistant superintendent and agent for defendant, wrote all the answers to all questions asked, and such other questions as were not asked but which appeared on the application, and then handed the application so filled out to Hayes for his signature, and Hayes signed the same, on the assumption that the questions had been answered by him and that his answers to the questions had been properly written in the application. The proprietor of the restaurant overheard the conversation, and heard Hayes tell the agents of the defendant that he had tuberculosis and did not think that he could obtain insurance, and that the agent stated to Hayes that he thought he could get the insurance. Yount, the agent of defendant, testified that at the time the application was taken, Hayes informed both Bragg and himself that he had tuberculosis, and stated that he did not think he could obtain insurance, but that both he and Bragg assured Hayes that they thought they could procure the insurance for him. Yount further states that Hayes did not at any time say that he did not have tuberculosis, nor did he state that he was in good health. He states that both Bragg and himself knew at the time the application was taken, the real condition of Hayes. He further states that Hayes did not write the answers to the application, but the answers were written by Bragg, and that Bragg filled out the application answering all the questions and then handed the application to Hayes for his signature.

There is no question but that Hayes had no knowledge of the answers written by Bragg in the application. He had fully acquainted both Bragg and Yount, agents of defendant, with his true condition, and it is also clear that Bragg and Yount wilfully wrote false answers to the questions contained in the application as to the condition of health of Hayes. It is equally clear that Hayes did not know that Bragg had written false answers to the questions contained in the application.

At the hearing of the cause the Chancellor sustained the bill and decreed a judgment in favor of complainant for the sum of $435 principal with interest thereon from March 10, 1927, $23.87, a total judgment of $458.87 and the costs of the cause.

From this judgment the defendant has appealed and has assigned errors. There is practically no conflict in the evidence.

The assignments of error are as follows:

"1.

"In finding as a fact that the defendant company had knowledge of the condition of health of the said Daniel D. Hayes, such as would estop them from defending upon the ground that he was not in sound health at the time the policy was delivered.

"2.

"In finding as a fact that said Daniel D. Hayes did not know, or have reason to believe that the agents writing the policy were perpetrating a fraud upon the company.

"3.

"In holding as a fact that the said Daniel D. Hayes, in accepting the policy of insurance as written, with a limited waiver on the face of it and conditioned to be void unless the assured was alive and in sound health at the delivery of the policy, was bound by the terms of the policy as written, and could have it enforced only in accordance with its terms.

"4.

"In not finding that the averments of the bill were fully met by the answer and not sustained by the proof, and in not dismissing the bill and holding the contract of insurance void."

We will not take up and discuss the several assignments of error separately, but will consider and dispose of the assignments together and collectively.

This court, in the case of Mrs. Annie C. Greer v. Independent Life Insurance Co., from Shelby county, had practically every question presented by this case for consideration, and held that the insurance company was liable. In that case Mrs. Annie C. Greer signed an application for insurance on the life of her minor son. The agent soliciting the insurance knew that the minor son had suffered a serious injury to his leg resulting in sarcoma, or cancer of the bone, and that it became necessary to amputate his leg, and that he was still afflicted with cancer, or sarcoma, at the time the application was taken. The mother explained fully the condition of her minor son to the agent, and the agent assured her that insurance could be procured notwithstanding his then state of health. The agent called on her the second time, and she again told the agent that she did not think that insurance could be procured on her son, and again made known to the agent the condition and state of health of her son. The agent insisted that notwithstanding this condition he could get the insurance. The mother consented to make the application after making a full disclosure of the condition of her son to the agent. The agent filled out the application and wrote in the answers to all the questions, and then passed the application to the mother for her signature. She signed the same without reading it, although she could read and write. In due time the policy was delivered, and contained practically the same condition as is contained in the policy sued on in this case, to the effect that if the assured was not alive and in good health at the time the policy was delivered that the company would not be liable on the

contract. In that case we reviewed the authorities and held that if the mother, who signed the application, knew that false answers had been written to the questions by the agent, that she would be a party to the fraud. This court further held that if she had given correct answers to the agent, and the agent wrongfully and fraudulently wrote false answers into the application without the knowledge and consent of the mother who signed the application, that she was excused from reading the answers as written by the agent, and that she had a right to rely upon the agent answering the questions truthfully.

This court further held in the Greer case that if the agent had knowledge of the true condition of the insured, and there was no concealment by the applicant of the true condition, that such knowledge as the agent had is imputable to the insurer. (Life & Guaranty Ins. Co. v. King, 137 Tenn., 698, 17 L. R. A. (N. S.), 1145; Barnes v. Fidelity Mutual Life Assn., 45 L. R. A., 264; 14 R. C. L., 900; 138 Am. St. Rep., 62; 43 L. R. A. (N. S.), 725.

Of course this rule would not obtain if the person giving the application knew that the agent had written false answers to the questions. In such a case the insured would be a party to the fraud.

As this court held in the Greer case, ''we think there would be no doubt with reference to the nonliability of the defendant insurance company under the facts in the case and the provisions of the contract of insurance and the statements in the application, signed by the plaintiff, unless the insurance company is estopped because of the misrepresentations contained in the application, and the condition and state of health of the insured at the time the policy was delivered. . . . As a general proposition, and we may say, as a generally recognized rule, where the insurer had knowledge of the facts which would invalidate the contract from its inception, such knowledge constitutes a waiver of any conditions or provisions contained in the contract of insurance inconsistent with the known facts by the insurer, the insurer is deemed to have waived the conditions or provisions which would otherwise invalidate the contract and would be estopped thereafter from asserting the 'breach of such conditions. (18 Ann. Cas. 627, Gurnett v. Atlas Mutual Ins. Co., 124 Iowa, 547; McCarty v. Piedmont Mutual Ins. Co., 81 S. C., 152; 18 L. R. A. (N. S.), 749, and notes).''

In Life and Guaranty Ins. Co. v. King, supra, it is said:

"It is held that the same rule applies where the agent soliciting the insurance knows of the existing facts, and such knowledge is imputable to the insurer. (Citing Irwin v. Westchester F. Ins. Co., 58 Miss. Rep., 441, 109 N. Y. Supp., 612).

Since the Greer case, decided by this court, was not published in the reports of this court, we quote further from the opinion in that case:

"We are of the opinion that where the insurance company has information at the time the policy is issued of the real condition of the proposed insured, even though the real condition is inconsistent with the statements contained in the application for the policy, or where the insurance company has such notice that by the exercise of reasonable diligence it would lead to a discovery of the true state of facts regarding the health of the insured, and issued the policy either in the knowledge of the facts, or with such notice as by the exercise of reasonable diligence the real facts could be discovered, the insurance company will be held to have waived the conditions which would void the policy, and would be estopped from relying upon the breach of the conditions in an action to recover on the policy."

To the same effect is Life & Guaranty Ins. Co. v. King, supra, and the numerous cases cited by the court in that case.

If it appeared from the facts in this case that the assured consciously permitted the application containing material misrepresentations to be forwarded to the offices of the insurance company, under circumstances which he knows negatives any probability that the actual facts have been revealed, and later accepts a policy which he knows was issued in reliance upon the statements contained in the application, he cannot recover on the policy. (37 C. J., p. 530). But we think it clear from the record in this case that Hayes made a full and complete disclosure of his real state of health to the agents of the defendant at the time they solicited and took his application. They assured him that the company would issue the policy, or at least lead him to believe that the company would issue the policy notwithstanding his physical condition as disclosed by him to the agents of the company. In this situation it cannot be said that he, in any way, participated in the fraud practiced by the agents of the company.

The facts of this case are peculiarly analogous to the case of Mrs. Annie Greer v. Independent Life Ins. Co., in which case the opinion is on file with the record in the office of the clerk of the Court of Appeals at Jackson, and cannot be distinguished on any principle of law or fact involved.

We find no error in the action of the Chancellor and the decree is affirmed, and judgment will be entered here for the amount of the decree below, plus interest thereon from the date of the decree, and the costs of the cause below and the cost of the appeal.

Owen and Heiskell, JJ., concur.