ROBBINS et al. v. NEW YORK LIFE INS. CO.—72 S. W. (2d) 788.

Middle Section. January 25, 1934.

Petition for Certiorari denied by Supreme Court, June 23, 1934.

72

S. G. Butler, of Sparta, and Turner & Haston, of McMinnville, for complainants.

Malcolm C. Hill, of Sparta, and Albert W. Stockell and J. C. Edwards, both of Nashville, for defendant.

DeWITT, J. This controversy involved a claim of James C. Robbins and his assignee, Robert L. Robbins, under their original bill, for disability benefits under a policy of insurance issued by the New York Life Insurance Company on February 27, 1931, upon the life of James C. Robbins, for $10,000, with provision for waiver of further premiums and payment of $50 per month for total disability; and it also involves a claim of right of the company, under its cross-bill, to the surrender and cancellation of the policy for fraud, misrepresentations, and conspiracy to defraud, in the procurement of the policy.

On September 26, 1931, James C. Robbins and his wife (the beneficiary of the life insurance named in the policy) assigned all dividend, benefit, and advantage to be derived from the policy to Robert L. Robbins.

By the decree appealed from, the cross-bill was dismissed, the original bill was sustained, and a recovery was awarded against the

company for the sum of $400 as disability benefits for the period of eight months preceding the date of the decree. The cause was tried to a jury upon issues of fact submitted to it as made up by the chancellor from the pleadings. These issues, with the answers of the jury thereto, were as follows:

"(1) Is the complainant, James C. Robbins, disabled as defined by the policy of insurance involved in this cause? Answer. Yes.

"(2) If the complainant, James C. Robbins, is totally disabled as defined by the policy of insurance involved in this cause, when did he become so disabled? Answer. October 1, 1931.

"(3) Did the disability, if any, you find the complainant, James C. Robbins has, arise from bodily injury or disease occurring before the insurance under said policy took effect, and known to the insured, but not disclosed in application for said insurance? Answer. No.

"(4) Did the complainant, James C. Robbins, on or about the 21st day of February, 1931, set about to practice a fraud upon the defendant, and cross-complainant, the New York Life Insurance Company, and to induce said Company to issue the policy of insurance involved herein? Answer. No.

"(5) Did the complainant and cross-defendant, James C. Robbins, on the 21st day of February, 1931, enter into a conspiracy with O. P. McKnight, who was at that time a soliciting agent of the New York Life Insurance Company, to practice a fraud upon the said Company and thereby procure the issuance of the life insurance policy involved herein? Answer. No.

"(6) Did the complainant, James C. Robbins, make knowingly false representations, in answering the questions contained in his application for insurance policy contract involved in this cause, with actual intent to deceive the defendant, New York Life Insurance Company? Answer. No."

At the close of all the evidence the defendant and cross-complainant entered a motion for peremptory instructions in its favor, upon nine grounds. The motion was overruled. The appellant's assignments directed to this action are that the court erred in refusing to instruct the jury to answer the aforesaid issues numbered 4 and 5 in the affirmative. It also insists that issue No. 6 was improperly submitted, that there is no evidence to sustain the negative answers thereto, and that there is no evidence to sustain the negative answer to issue No. 3. Other contentions made by assignments of error will be stated and disposed of in the course of this opinion.

██ On February 21, 1931, the date of the application of James C. Robbins for this insurance, he was nearly 27 years of age, engaged in operating a small mercantile store at Doyle. He failed in this business in the following summer. In the following autumn, while hauling stave bolts, he found that he was suffering from shortness of breath, weakness, and nervousness. From that time his condition

grew worse, and he had heart trouble, arteriosclerosis, and high blood pressure. There is abundant evidence that he was totally disabled to do work, follow any occupation, or engage in any business for remuneration or profit, and that such disability had continued uninterruptedly for a period of at least four months, such condition being the basis stated in the policy for the payment of disability benefits, provided that the disability arose from bodily injury or disease occurring after the policy was issued and delivered. His physician, Dr. Clark, examined him for insurance three times in February, 1931, the third time being on the 25th of that month, when he found that his blood pressure was low enough to warrant his passing him for the insurance, although within a few days previously he had declined to pass him because his blood pressure was too high. Dr. Clark, testifying in June, 1932, after he had examined and treated Robbins many times since October, 1931, stated that in his opinion he was, in February, 1931, suffering from these same afflictions which caused him to be disabled. This is the only evidence tending to show such fact. But James C. Robbins testified that this ill health began about a year and a half before the trial, in the autumn of 1931; that until that time he had nothing wrong with him that he knew of; that he did not know, in February, 1931, why Dr. Clark did not pass him for insurance at his first two examinations; that at that time he was in fairly good financial condition and was operating his store. Dr. Johnson, who examined him on February 21, 1931, testified that he found his heart all right, that his blood pressure was compatible with that of a healthy man at his age, and that he found nothing wrong with him. He said that he did not then have the troubles which he had when he examined him in November, 1931, and which caused his disability. We are of the opinion that this is evidence upon which the jury could predicate its finding upon the first issue, that this complainant was disabled as defined by the policy. The statement of Dr. Clark was a mere expression of opinion, not conclusive as a matter of scientific fact, and was therefore more or less speculative. The complainant's statements were admissible as evidence. 4 Cooley's Briefs on Insurance, p. 3333, and cases cited; Jones on Evidence, sec. 360; 1 Wigmore on Evidence, sec. 568; 22 C. J., 618; Plotner v. Insurance Co., 48 N. D., 295, 183 N. W., 1000.

The defenses of fraud, misrepresentations, and fraudulent conspiracy arise from certain questions and answers in the application made by James C. Robbins for the insurance and alleged collusion with the soliciting agent of the insurer. As matters material to the risk, they were of serious importance; and, if the answers were false and if this had been known to the officers of the insurance company who passed upon the physical risk, they would certainly have been warranted in rejecting the application. Mutual Life Insurance Co. v. Dibrell, 137 Tenn., 528, 194 S. W., 581, L. R. A., 1917E, 554;

Volunteer State Life Insurance Co. v. Richardson, 146 Tenn., 589, 244 S. W., 44, 26 A. L. R., 1270. These statements and questions and answers are as follows:

In part I (statements to the agent):

"6a. The following is all the insurance I now have on my life:

"State name of company and amount (if none, say none) 2000 Lincoln Life."

"In part II (answers to the medical examiner):

"6. A. Have you now pending any other application for insurance on your life or for the reinstatement of insurance? No.

"B. Have you ever been examined either on or in anticipation of an application for insurance without receiving such insurance? No.

"C. Have you ever been declined for life insurance or for reinstatement of life insurance? No.

"D. Have you ever been offered a policy different in plan or amount or in premium rate from that applied for? No.

"7D. Have you ever been found to have a high blood pressure? No.

"8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of:

"A. The Brain or Nervous System? No.

"B. The Heart, Bood Vessels or Lungs? No.

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answer? No.

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? None."

At the end of the application, just above the signature of the applicant, James C. Robbins, is the following statement in printed form.

"On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

It appears without contradiction that Robbins made his application to the People's Life Insurance Company on February 18, 1931, that Dr. Clark found his blood pressure to be normal and he passed him for insurance, and that upon this application a policy was issued by the People's Life Insurance Company for $10,000, with disability benefits. It likewise appears further that on the same day, February 18, 1931, Robbins made application in writing to the Lamar Life Insurance Company for $10,000 of life insurance, with disability benefits, but the policy was never issued by that com-

pany. In each of these applications it was recited that the applicant had $2,000 of insurance with the Lincoln Life Insurance Company and $2,000 of insurance in the Modern Woodmen. The application to the New York Life Insurance Company was made three days later and while the aforesaid applications were pending. It appears from the certificate of Dr. Clark that his physical examination of Robbins under his application of February 18th to the agent of the People's Life Insurance Company was made on February 25, 1931. This was the third examination of him; the other two resulting unfavorably. It appears further that the examination of Robbins by Dr. Mooneyham for the Lamar Life Insurance Company was made on February 20, 1931, and that this physician made two tests of him for blood pressure, one on the 20th and the other on the previous day, before he would pass him. Robbins testified that he did not know why Dr. Clark or Dr. Mooneyham thus put him off, telling him on the first occasions that he was not in condition to get life insurance, that he did not know that it was due to high blood pressure, and that he did not know that he had high blood pressure until long afterward when he went to Dr. Clark for treatment.

It appears further without contradiction that, when Dr. Clark had refused the second time to pass the applicant for the policy with the People's Life Insurance Company, and as he was leaving the office of Dr. Clark, he was introduced by one Frank Jenkins to one O. P. McKnight, who was at that time a soliciting agent for the New York Life Insurance Company; that McKnight asked Robbins if Dr. Clark had passed him on this examination, and Robbins told him that he had not; that McKnight thereupon asked him to apply for a $10,000 policy in the New York Life Insurance Company, stating that he would guarantee it to go through; and that Robbins agreed to do so. Immediately, in an automobile in front of the office of Dr. Clark in Sparta, the said McKnight then filled out part I of the application to the New York Life Insurance Company for a $10,000 policy, which policy is involved in this cause. It appears further that at this time Robbins had a $2,000 policy with the Lincoln Life Insurance Company, which he had taken in 1924 with disability benefits, and a $2,000 policy with the Modern Woodmen of America, without disability benefits, which he had taken in 1929. Robbins testified that he told McKnight that he had both policies, but that McKnight told him that all he wanted was what policies he had which carried disability benefits. McKnight was not called by either party to testify and did not testify in this cause. The complainants made this knowledge of McKnight one basis of their claim of estoppel upon the insurer. Robbins testified that when McKnight had filled out part I of the application he signed the same without reading it, and he did not know

that it contained the aforesaid answer to question 6A; therefore we have evidence that the agent knew the fact that he had $2,000 of insurance in the Modern Woodmen, but suppressed it from the application.

When the application had been filled out by McKnight, he and Jenkins went with Robbins to the office of Dr. Johnson, the medical examiner for the New York Life Insurance Company in Sparta. Before going there, Robbins gave his note to McKnight for the first premium on the policy, amounting to $256.65, including the disability benefit and a double indemnity benefit. Robbins testified that on the way to Dr. Johnson's office McKnight, although he knew that an application was pending to the People's Life Insurance Company for insurance on the Life of Robbins, and knew that Robbins had been examined for insurance on that day, yet he advised him to answer in the negative the aforesaid questions 6A and 6B in part II of the application, and which would be asked him by the medical examiner, Dr. Johnson. At that time part II of the application to the People's Life Insurance Company had not been filled out by Dr. Clark and was still in his office. Robbins testified that McKnight knew also about the application he had made to the Lamar Life Insurance Company; that McKnight asked him if he was going to take these two other policies; that Robbins replied that he was not, that he could not take them all, that he would just take the New York Life Policy involved in this cause and drop the others. This statement was excepted to as incompetent on the ground that it was a self-serving declaration. We think that it was such a declaration and it should not have been admitted.

It appears that Robbins received and accepted the policy of the People's Life Insurance Company, and there is no evidence that his failure to obtain the policy from the Lamar Life Insurance Company was due to any action taken by him. He testified further that McKnight asked him whether or not those applications had been sent away to the companies, and he replied that they had not, and McKnight then said, ''You have no other application now pending unless they have been sent away to the companies; when Dr. Johnson asks you that question, you answer no.'' Of course this was a direction by the agent to Robbins as to how the question should be answered. Robbins was misled by the agent into believing that those applications were not pending and would not be until they should be sent off to the offices of the companies. However, it must be remembered that on the 20th, the previous day, Dr. Mooneyham had passed Robbins for insurance in the Lamar Life Insurance Company. It is insisted that this knowledge and action on the part of McKnight was imputable to the defendant company, that, if any fraud was practiced on it, it was by its own

agent and not by Robbins, and therefore the company is estopped to take advantage of the misrepresentation.

■■ It clearly appears without contradiction that McKnight knew that Robbins had just applied for the policies in the two other companies. Of course, his advice that the applications were not pending was erroneous and must be regarded as given with knowledge of the error; for an application for life insurance comes into existence when it is filled out, signed by the applicant and delivered to an agent of the company authorized to receive it. This appears to us to be mere common sense, and it was so decided in the cases of Webb v. Security Mutual Life Insurance Co., 126 Fed., 635 (C. C. A.), and Edington v. Aetna Life Insurance Co., 100 N. Y., 536, 3 N. E., 315. We think, however, that it was for the jury to determine whether or not Robbins was, through ignorance and good faith, misled by McKnight into believing that his answer was truthful.

Robbins testified that, when McKnight delivered the New York Life Insurance policy to him, he told him that the policy provided for only one-half the disability benefits he had applied for, on account of his having taken the policy with the People's Life Insurance company. Exception to this statement was overruled, and exception taken thereto, but no assignment of error is based thereon. Jenkins testified that he was present and that McKnight told Robbins that only one-half of the disability benefits applied for was provided because of another policy. No exception was taken to this statement. However, we do not consider this statement by McKnight as having any probative effect as to the knowledge of the officers of the company of the policy in the People's Life Insurance Company. It was hearsay and by itself could not bind the company.

The answer of Robbins that he had never been examined either on or in anticipation of any application for insurance without receiving such insurance was literally true, for he had just been examined by Dr. Clark on that day and no action had been taken on his application further than that Dr. Clark would not pass him on that day. However, there was a concealment from Dr. Johnson of that application and of the refusal of Dr. Clark to pass him. At that time he had been declined for insurance in the People's Life Insurance Company, although upon a later examination he was approved by Dr. Clark as a physical risk. His answer to that question was literally untrue; so was his answer that he had never been found to have high blood pressure (which was a very material matter), although his testimony that he did not know that he had would be evidence from which it could be concluded that he did not knowingly make this as a false statement. His answers that he had not consulted a physician or practitioner for diseases of the brain or nervous system, heart, blood vessels, or lungs, or for

any other ailment or disease, are not shown by undisputed evidence to be false, for he testified that he had not so consulted physicians. His answer that he had not been examined by any physician within the previous five years was false, for he had within a few days been examined by Drs. Clark and Mooneyham, both of whom had found him with abnormal blood pressure. Had he disclosed this fact, the company's physician would have had the opportunity to inquire of those physicians as to his blood pressure and other physical condition. There is no evidence that he made these statements, other than that as to other application pending, upon the advice, direction, or persuasion of McKnight or other agent of the insurer.

Unless the company is estopped by the knowledge of its agent McKnight that Robbins had been examined by another physician and had not been passed by him for life insurance, the question of avoidance of the policy for misrepresentation is governed by section 3306 of Shannon's Code, which is as follows:

"No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation (or warranty) is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

██ Under this statute a policy may be voided for actual intent to deceive or for materiality of a misrepresentation increasing the risk of loss. Although there may have been no actual intent to deceive, if the matter represented be such that, if the truth were known, the insurer would have been warranted in rejecting the application, the policy should be declared forfeited. These rules were elaborately discussed and applied in Volunteer State Life Insurance Co. v. Richardson, 146 Tenn., 589, 244 S. W., 44, 46, 26 A. L. R., 1270. In that case it was held that negative answers to questions as to the use of liquors within the previous five years, when the applicant was a habitual user of intoxicating liquors, entitled the insurer to have the policy canceled. In Blackman v. Casualty Co., 117 Tenn., 585, 103 S. W., 784, 785, the court cited its previous decisions applying these rules, and summarized them in the following language:

"The substance of these decisions is that, where the statement is one concerning the existence or nonexistence of a given fact, there can be no recovery if the matter be not truly stated, whether such failure to state with truth and correctness be the result of fraud or of innocent mistake; but that, if the statement be as to a matter of opinion merely, a lack of accuracy will not cause a forfeiture of insurance, if such statement was made honestly and after the ex-

ercise of due diligence to learn the truth of the matter so represented. It was further held that a statement concerning one's bodily condition with respect to obscure or undeveloped disease would be a mere matter of opinion, and that the insured would not be responsible for a misrepresentation as to such a matter, unless he had reason to believe that the misrepresentation was false.''

The testimony of the complainant that his answer to the aforesaid question 11 was correct is nullified by his admission that he had been twice examined by Dr. Clark. The question whether or not he had been examined by a physician within the preceding five years did not involve a mere matter of opinion; it involved an absolute fact, either that he had or had not been so examined. Even if he did intend at that time not to take the policies in the People's Life Insurance Company and the Lamar Life Insurance Company, he had been examined by both Drs. Clark and Mooneyham under the applications to those companies. It is true that McKnight heard him give his answers to these questions, but, as aforesaid, there is no evidence that he had told him to make them.

The question is of the materiality of a false answer—whether or not the insurer would have been reasonably justified in rejecting the application had it known the truth. The matter misrepresented must of course be of that character which the court can say would reasonably affect the insurer's judgment. We are of the opinion that, had the company known aside from the uncommunicated knowledge of its agent that just before the making of this application the complainant had been three times examined for life insurance, once by Dr. Mooneyham and twice by Dr. Clark, and had been disapproved by them as a risk, it would not have accepted complainant's application and issued and delivered this policy to him. In Mutual Life Insurance Co. v. Dibrell, 137 Tenn., 528, 194 S. W., 581, 582, L. R. A., 1917E, 554, it was distinctly held that an untrue statement by the applicant as to whether he had been examined for a policy in any company or association, which was not issued as applied for, was, as a matter of law, one which was material and increased the risk of loss. In that case it was said:

''It was not the purpose of the statute to make a further change in common law, as set forth in such decisions, so as to require that the matter misrepresented should be one that contributed to the hazard after issuance of the policy, that is, by the death of the insured, in order to make the policy invalid. . . . The common-law rule, in this country and in England, undoubtedly was and is that, if an applicant falsely state that he had not previously made another application or been examined for any other insurance upon which a policy had not been issued, the matter was so material that the policy was avoided when the statement was not expressly made

the subject of a warranty and was deemed to be a mere representation.''

In the opinion in the Richardson Case, referring to the Dibrell Case, it was clearly pointed out as follows:

''There were three considerations stated in that case making the matter developed by such questions and answers material. In the first place, a truthful answer would have put the company upon guard and enabled it to make inquiries and further physical examination, and might have induced an outright declination. In the second place, the company was entitled to act upon the judgment of other insurance companies. In the third place, the company could judge of the applicant's anxiety for insurance, and thereby determine the probability of the existence of hazards not revealed by the application.''

These very considerations manifestly make material such a misrepresentation as to previous examination by physicians.

The complainant cannot be heard to say that he did not know that his statement was untrue. He made it voluntarily in answer to the question from the physician. He was not misled or induced by the agent into making it. It is a familiar rule that knowledge possessed by the insurance agent of the insured's true condition at the time of the application is imputable to the company; but it is an exception to this rule that, where the insured knowingly permits the application containing material misrepresentations to be presented by the subordinate agent to the insurer's officers under circumstances which the insured knows negative probability that the facts will be revealed, the policy must be voided. Scott v. National Life & Accident Insurance Co., 16 Tenn. App., 31, 64 S. W. (2d), 53; 37 C. J., 530; 4 Couch on Insurance, pp. 2777, 3050. In such a case the insured is deemed a party to the fraud and will not be permitted to take advantage of his own wrong. We may here call attention to the following statement in the opinion in Mutual Life Insurance Co. v. Hilton-Green, 241 U. S., 613, 36 S. Ct., 676, 680, 60 L. Ed., 1202, in which it was said:

''The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing.''

In that opinion it was aptly said that, in the case of representations, the insured should exercise the same good faith toward the

insurer which he demands of it. We think that he is obligated to make plain facts about which he could not make innocent mistakes.

It is further to be noted that the complainant did not testify that he did not read over the medical examination before he signed it.

 We hold that it was not error for the chancellor to submit to the jury issue No. 6, as it presented the question of actual intent to deceive, which if answered in the affirmative, would have been sufficient to avoid the policy; but the negative answer to this issue was not determinative of the case. It is impossible to escape the conclusion from complainant's own admissions, that he did knowingly make false representations as hereinbefore shown, so that the assignment that there is no evidence to support the finding of the jury as to issue No. 6 as submitted to it, must be sustained. The assignment that the court erred in overruling the motion to instruct the jury to answer issue No. 14 in the affirmative must be sustained.

We do not think that the evidence is undisputed upon the question of conspiracy between the complainant and McKnight, and therefore the assignment challenging the findings upon issue No. 5 is overruled.

██ The admission of testimony of the complainant as to his conversation with McKnight in which he told him that he was not going to take the other two policies was error, because, as aforesaid, this was a selfserving declaration. Assignment No. 7 is therefore sustained. It was not error to admit the testimony of complainant as to his conversations with McKnight, in which McKnight purported to explain to him the meaning of "application pending," and restriction as to other disability insurance, complainant's statement that he told McKnight exactly what other insurance he had, in other words, testimony as to his conversations with him which bore upon the question of his good faith and tended to show fraud on the part of the agent, and that complainant did not know what McKnight wrote in the application as he did not read it; for the rule of estoppel upon a signer to an ordinary contract to say that he was ignorant of what he signed is not applicable to applications for insurance. The reason is lucidly stated in the following paragraph from 5 Cooley's Briefs on Insurance (2 Ed.), p. 4127:

"The principle that the admission of testimony to show that the agent has, through mistake, negligence, or fraud, inserted false answers in the application, is not in violation of the ordinary rule against the admission of parol evidence to vary a written contract, but proceeds on the ground that the contents of the application are not the insured's statements, but the statements of the agent of the insurer, and that the company is by the acts of its agent es-

topped to set up that the statements are those of the insured, is also supported by the Supreme Court of the United States on the ground that to apply the doctrine as to parol testimony with the strictness demanded by the insurer would be to make a rule of evidence adopted as a protection against fraud an instrument of the very fraud it was intended to prevent.''

There are many Tennessee decisions admitting and applying such parol evidence. Planters' Insurance Co. v. Sorrels, 1 Baxt., 352, 25 Am. Rep., 780; McCarthy v. Catholic Knights, 102 Tenn., 345, 52 S. W., 142; Continental Fire Insurance Co. v. Whitaker, 112 Tenn., 151, 79 S. W., 119, 64 L. R. A., 451, 105 Am. St. Rep., 916; Knights of Pythias v. Rosenfeld, 92 Tenn., 508, 22 S. W., 204; Life & Cas. Insurance Co. v. King, 137 Tenn., 685, 195 S. W., 585; Moak v. Continental Cas. Co., 4 Tenn. App., 287; Hayes v. Com. Life Insurance Co., 8 Tenn. App., 554; Norvill v. Mutual Benefit H. & A. Association, 14 Tenn. App., 403.

During the course of the trial the chancellor permitted the complainant and cross-defendant to file an amendment to his answer to the cross-bill, to the effect that he did not read and did not know that the agent McKnight had written in part I of the application the answer which appears therein, but that it was the answer of McKnight. The allowance of this amendment was not an abuse of the discretion of the chancellor, although it came rather late. We do not see that any surprise was occasioned which made it any more difficult for the defendant to conduct its defense.

The defendant's counsel tendered to the court for submission to the jury three issues, but the chancellor refused to submit them, either because he may have thought that some of them were immaterial, or that they were but amplifications of issues which were submitted. We think that they contained both grounds of objection, and therefore that it was not error to decline to submit these issues to the jury. While some particulars embodied in these proffered issues might well have been included in the issues submitted, the latter, while quite comprehensive, were in our opinion sufficiently definite that, when considered under the evidence and the chancellor's instruction to the jury, they very plainly showed the determinative questions presented. The assignments based upon the refusal to submit these issues are overruled.

As the undisputed evidence shows plainly that the complainant in his answer to the medical examiner of the company made a misrepresentation of fact materially increasing the risk under the policy applied for, thereby misleading the company into issuing the policy; as he made it knowingly, so that the knowledge of the company's agent does not work an estoppel to take advantage of the misrepresentation—the decree appealed from will be reversed, the verdict of the jury on issue No. 4 will be set aside, and the

motion for a directed verdict in defendant's favor upon said issue is sustained. The original bill is dismissed, the prayer of the cross-bill is sustained, and a decree will be entered canceling the policy sued on and declaring it null and void. The insurance company tendered back and paid into court the amount of the premiums which had been paid on the policy in question. The cause will be remanded to the chancery court of White county for proper disbursement of this fund. The costs of the cause, including the costs of the appeal, will be adjudged against the complainant.

Faw, P. J., and Crownover, J., concur.