379 P.2d 653

**TEMPERANCE INSURANCE EXCHANGE,**
a corporation, Plaintiff-Appellant,

v.

**Max J. COBURN, Commercial Credit Corporation, a corporation, and Deverl C. Baxter, Individually, and Deverl C. Baxter, as Guardian ad litem of Cleone Baxter, Radele Baxter and Sheldon Baxter, Defendants-Respondents.**

**No. 9193.**

Supreme Court of Idaho.

March 1, 1963.

Rehearings Denied April 17, 1963.
See 379 P.2d 1024.

McDevitt & McDevitt, Pocatello, for appellant.

Black & Black, Pocatello, for respondent Coburn.

Baum & Peterson, Pocatello, for respondents Baxters.

McQUADE, Justice.

On November 9, 1958, an automobile driven by the defendant, Max J. Coburn, was involved in an accident that resulted in the death of the parents of the respondents, Cleone Baxter, Radele Baxter and Sheldon Baxter. Subsequently, the appellant, Tem-

perance Insurance Exchange, who had issued a policy of automobile liability insurance to Coburn, brought this action for the purpose of obtaining a judicial declaration that the policy had been fraudulently obtained by Coburn by means of false representations and concealment of facts in his application for the policy and for this reason the policy was void and the appellant was not liable thereon. See Temperance Insurance Exchange v. Carver, 83 Idaho 487, 365 P.2d 824.

Appellant contends Coburn in the application for insurance warranted he was a total abstainer; that his application contained statements he had not been involved in any automobile accident nor received any citations for unlawful driving during the three years immediately preceding the date of that application; and that he had never had his automobile insurance cancelled. Appellant asserts that these statements and warranties are untrue because Coburn had been involved in an automobile accident within three years of the time he had applied for insurance with appellant, that as a result of that accident, Coburn's insurer cancelled his insurance policy, that Coburn received a citation to appear in court as a result of his actions in connection with that accident, and that Coburn admitted in writing that he was not a total abstainer prior to and subsequent to the time he made the above statements. It is further claimed that

appellant issued the policy of insurance here in question in reliance upon Coburn's statements and that if Coburn had truthfully answered the questions in the application form, the appellant would not have issued the policy to him. It is also claimed that Coburn concealed the name of the company which cancelled his insurance policy by naming a different company as his previous insurer.

Coburn agrees that the answers to the questions on his application for insurance are not correct. He claims that he did not fill out the application for insurance—rather, that an employee of the appellant's agent wrote the statements in the application. Coburn further claims that he informed this employee of the prior accident and that she filled out the application with full knowledge of the true facts. Coburn contends that the only question asked him with regard to his drinking habits was whether he was a habitual drinker and that he had answered this question in the negative. Coburn claims that he did not read the provision in the policy stating that an applicant for the policy warranted he was a total abstainer and that he did not know the policy contained such provision.

Respondents, Cleone Baxter, Radele Baxter and Sheldon Baxter, urge that upon the happening of the accident on November 9, 1958, the policy came within the terms of

the Motor Vehicle Responsibility Act (Title 49, Chapter 15, I.C.) and the policy could not thereafter be cancelled in derogation of their rights, even though Coburn may have obtained the policy from appellants by means of false representations. These respondents argue that upon the happening of an accident a policy of insurance becomes irrevocable as between persons, other than the insured, who are injured in the accident, and the insurance company.

At the trial, it was established Coburn had made application for the insurance policy here in question to the Loyal Hansen Insurance Agency on March 17, 1958. Mrs. Hart, an employee of the agency, was in the office at the time. She testified that she filled in the answers to questions on the application, but that she only wrote in answers given by Coburn, after she had read the questions to him. Mrs. Hart did not recall whether she read the statement on the application whereby the applicant warranted he was a total abstainer, but did recall questioning Coburn concerning his drinking habits.

Loyal Hansen, a local agent for the appellant, testified that he was absent from his office when the application was there completed but when he saw the application he went to see Coburn at his place of employment and explained to him that in order to qualify for this type of insurance, the applicant had to be a total abstainer, using no alcoholic beverages. Hansen testified that Coburn assured him he was qualified.

The president of the appellant insurance company testified that it was the policy of the company not to insure persons who drank alcoholic beverages, and that premium rates under such insurance policies were between forty and forty-five per cent lower than those usually charged. He also stated that if they had been properly informed that Coburn had been involved in an accident within the last three years, an investigation would have been conducted to determine whether the appellant cared to grant the application for the policy; but that the company relied upon the statements appearing on the application.

Coburn's signed statement, admitted in evidence, includes a statement that for the last 10 or 11 years, Coburn has consumed intoxicants in moderate amounts except for Saturday nights, when his imbibing accelerated to the extent that intoxication resulted.

Coburn testified he informed Mrs. Hart he had been involved in an accident within the three year period prior to the date of the application; that his insurance had been cancelled due to that accident; that Mrs. Hart had asked him if he were a habitual drinker and that he had said he was not; that when Hansen talked to him after he

had made out the application, he did not recall the agent telling him that he must be a total abstainer to be qualified for the type of insurance offered by the company; and that he did not read the policy provisions before he signed the application. On cross examination, the following testimony reveals the fact that Coburn was aware of the statements in the application as to prior insurers:

"Q. * * * Now at the time you signed that application, Mr. Coburn, did you make any statement to Mrs. Hart that she put down the answers different than you gave them?

"A. No, I didn't. No.

"Q. Did you complain to her about them at all?

"A. No.

  *    *    *    *    *    *

"Q. You could see the writing she wrote, could you not? You were right at the bench in the room there?

"A. Yes.

"Q. And did you notice that she put down Mutual of Enumclaw instead of Farmers? (sic.)

"A. Yes.

"Q. You didn't object to that?

"A. No.

"Q. You didn't object to the statement that you had had no previous accident, as she put it down?

"A. No.

"Q. And you noticed her as she put them down?

"A. Yes.

"Q. You at no time then objected to what you called her putting down mis-statements of your answers; is that correct?

"A. Well, like I said, we discussed it and decided it would be better to put Enumclaw down."

At the conclusion of the trial, the trial court found that the plaintiff had failed to prove that Coburn had obtained the policy through fraud, mistake or misrepresentation. The trial court concluded that the policy was in full force and effect according to its terms and conditions and the laws and statutes applicable thereto, on the date of the accident. Judgment was entered in accordance with the findings of fact and conclusions of law. This appeal is taken from the judgment and from an order overruling plaintiff's exception to the findings of fact and conclusions of law.

Appellant contends the evidence fails to support the findings of fact of the trial court that the appellant failed to prove that

Coburn obtained the policy through fraud, mistake or misrepresentation and that the policy was in full force and effect according to its terms and conditions and the laws and statutes applicable thereto.

In Charlton v. Wakimoto, 70 Idaho 276, 216 P.2d 370, this Court held:

"As a general rule material misrepresentations of fact on the part of the assured which induce the insurer to assume the risk which otherwise it would not have taken, constitute legal grounds for avoidance. And an insured's false statements in an application relative to past accidents or arrests for reckless driving, constitute 'warranties as to material facts'. * * *

"And a contract of insurance and the liability of the insurer may be avoided by reason of fraud in the inception of the contract, or a concealment, or misstatement of matters material to the risk."

Coburn does not dispute the contention of appellant that the misrepresentations on the application were material to the risk; rather, he asserts a full disclosure of the facts concerning his prior automobile accident and the cancellation of his insurance policy was made, and that Mrs. Hart filled out the application and placed false answers therein notwithstanding the fact that she had been truthfully informed by Coburn. Coburn admitted on cross examination he watched Mrs. Hart fill out the application and knew that the answers given to the questions therein were untrue. Therefore, at the time Coburn signed the application, he was fully aware of the fact that the application contained misstatements.

■ Where an applicant knows that the agent is not copying true answers to the questions on an application for insurance, the insurer is entitled to a cancellation of the policy. National Life & Accident Ins. Co. v. Atwood, 29 Tenn.App. 141, 194 S.W. 2d 350. See also: Molstead v. Reliance National Life Insurance Co., 83 Idaho 458, 364 P.2d 883; Robbins v. New York Life Ins. Co., 18 Tenn.App. 70, 72 S.W.2d 788; Nationwide Life Insurance Company v. Attaway, 4 Cir., 254 F.2d 30. The above rule is amplified in Ketcham v. American Mut. Acc. Ass'n., 117 Mich. 521, 76 N.W. 5, wherein that court stated:

"The courts have always been anxious to take care of the rights of the assured when the applicant has relied upon the agent informing the company what had been truthfully told him about the character of the risks; but the courts never have said the company is bound by statements contained in an application, when not only the agent, but the assured knows they are untrue,

and calculated to deceive, and the application is to be forwarded to the company as the basis of its action."

We conclude that where, as here, the applicant has full knowledge of the falsity of the statements material to the risk contained in his application at the time he signs it, the insurer is entitled to cancel the policy.

The additional problem involved in this case is whether or not the insurer may cancel the policy and thereby avoid any liability to the respondents, Cleone Baxter, Radele Baxter and Sheldon Baxter. It is their contention that the policy comes within the terms of our Motor Vehicle Safety Responsibility Act, I.C. § 49–1501 et seq., and that the policy may not be cancelled, following an accident, in derogation of the rights of injured third parties. I.C. § 49–1505 empowers the Commissioner of Law Enforcement to require a person who has been in an accident resulting in bodily injury, death, or property damages in excess of $100.00 to file proof of financial responsibility. Failure of an individual to meet this statutory requirement can result in suspension of that person's driver's license. I.C. § 49–1505(b).

A review of the provisions of the Idaho Motor Vehicle Safety Responsibility Act reveals that its provisions take effect only upon the happening of an accident of the type enumerated therein. In Travelers Ins. Co. v. Boyd, 312 Ky. 527, 228 S.W.2d 421,

the applicability of financial responsibility statutes is stated to be as follows:

"The whole spirit and tenor of the * * * (financial responsibility) act is that it acts *in futuro*. It does not apply to the first accident nor is it applicable where the insured had not been required to furnish proof of his ability to respond in damages by taking out a liability policy covering an accident occurring thereafter."

See also McCarthy v. Insurance Co. of Texas, (Ct.Civ.App.Tex.) 271 S.W.2d 836; Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447, 129 A.2d 561; Aetna Casualty & Surety Co. v. Simpson, 228 Ark. 157, 306 S.W.2d 117; 34 A.L.R. 2d 1298, Sec. 1(2). By urging that upon the happening of an accident an automobile liability policy, not previously required by the Commissioner of Law Enforcement under the Motor Vehicle Safety Responsibility Act, may not be cancelled by the insurer for any grounds and that the insurer becomes absolutely liable to injured third persons, these respondents seek to apply the Act retroactively. We are unable to agree with this contention. Proof of financial responsibility is required after the happening of an accident of the type contemplated by the Act and not prior thereto or in anticipation thereof. In Cohen v. Metropolitan Casualty Ins. Co. of New York, 233 App. Div. 340, 252 N.Y.S. 841, that Court held:

"* * * the words 'Motor Vehicle Liability Policy' as defined in the act must refer to 'required' policies only. To make the act applicable to all liability policies would mean that whenever such a mishap occurred the insurance carrier would always be absolutely liable under all circumstances. We cannot concur with this reading. The purpose to be furthered by the act, and its limitations, are clearly apparent. It is intended to protect the public from suffering loss through the carelessness of automobile owners who have manifested their financial irresponsibility. IT DIFFERENTIATES BETWEEN CAR OWNERS WHO HAVE SHOWN THEMSELVES TO BE IRRESPONSIBLE, AND THOSE WHO HAVE NOT. It declares that when those who carry liability policies through legal compulsion cause damage in automobile operation, their insurance carriers are absolutely liable for the resulting loss; but it lays down no such rule in the case of the automobile owner voluntarily carrying such a policy, whose responsibility has never been questioned. The construction contended for by plaintiff would encourage fraud and deceit, and would create a legal relationship so unfair and unreasonable as to be unconscionable." (Emphasis supplied.)

The above statement is amplified, in Buzzone v. Hartford Accident and Indemnity Co., 41 N.J.Super. 511, 125 A.2d 551, by the following statement:

"The essence of the fraud, deceit and imposition to which the court referred lies in subjecting to the statutory liability an insurer who did not intend to assume it, * * *."

The record in the instant case is devoid of any showing that appellant undertook to provide proof of financial responsibility as required by law through the issuance of the policy here in question. The contrary appears to be the case, for the evidence is uncontradicted that appellant was unaware of the prior accident. Under the facts of this case, we conclude that this automobile liability insurance policy was not obtained or issued under the requirements of the Idaho Motor Vehicle Safety Responsibility Act, that the terms and conditions of said policy imposed no absolute liability upon the appellant, and that, therefore, upon proof of Coburn's knowledge that the application contained false statements material to the risk when he signed said application, appellant was entitled to cancel the policy. The judgment of the trial court is reversed and the cause remanded with instructions to enter judgment for the appellant, Temperance Insurance Exchange.

Costs to appellant.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.