Robert LANE, Jr., and Wife, Gloria K. Lane

v.

The TRAVELERS INDEMNITY COMPANY.

Court of Appeals of Tennessee, Eastern Section.

April 17, 1973.

Certiorari Denied by Supreme Court Aug. 20, 1973.

Frantz, McConnell & Seymour, Knoxville, for appellant, The Travelers Indemnity Co.

Dexter A. Christenberry, Knoxville, for appellees, Robert Lane, Jr., and wife, Gloria K. Lane.

W. Conway Garlington, Knoxville, for appellees, Evelyn J. Carter and Charles W. Carter.

## OPINION

COOPER, Presiding Judge (E. S.).

This is an appeal from a decree of the Chancery Court of Knox County, Tennessee, wherein that Court held defendant, The Travelers Indemnity Company, liable under an automobile liability insurance policy which it issued to complainant, Robert Lane, Jr., for the satisfaction of judgments previously obtained against Lane and his wife, Gloria K. Lane, By Evelyn Carter and Charles W. Carter in the Circuit Court of Knox County.

The automobile accident, on which the Carter judgments were predicated, occurred on May 17, 1970. Mrs. Lane, driving her husband's automobile struck and injured the Carters, who were pedestrians. The accident and subsequent circuit court suits were reported to Travelers, who denied coverage and declined to defend the suits. Evelyn Carter secured a judgment against the Lanes in the amount of $20,000.00 as damages. Charles W. Carter was awarded a judgment of $500.00 as damages.

Robert Lane, Jr., and wife, Gloria K. Lane, then brought the present suit in the Chancery Court of Knox County seeking a declaration that The Travelers Indemnity Company was under a contractual obliga-

tion to pay the circuit court judgments secured by the Carters, and to pay expenses incurred by the Lanes in defending the Carter suits.

Travelers, in its answer, admitted it had issued an *automobile liability insurance* policy to Mr. Lane covering the period of time in which the Lane-Carter accident occurred but contended the policy had been effectively cancelled prior to the accident on which the Carter judgments were based. Subsequently, Travelers amended its answer to charge that Lane had made fraudulent and material misrepresentations in his application for insurance and sought to have the Chancellor declare the policy issued Lane to be void *ab initio.*

On trial, which was by oral testimony, the Chancellor found that Travelers had cancelled the policy of insurance issued Lane, but, by subsequent acts, had led Mr. Lane to believe the cancellation was in error and that the policy had been reinstated. The Chancellor also found that Lane had made misrepresentations in applying for insurance with Travelers, but that the misrepresentations were not made "with intent to deceive" and did not materially increase the risk of loss.

Based on these findings, the Chancellor concluded the policy of insurance issued by Travelers to Lane was in force on the day of the Lane-Carter accident; that Travelers was liable for payment of the judgments secured by the Carters and was liable for payment of reasonable expenses incurred by the Lanes in defending the Circuit Court suits and in prosecuting the present suit. Accordingly, the Chancellor entered a decree awarding Evelyn Carter a judgment against Travelers in the amount of $19,866.00 (the amount of the circuit court judgment less the premium due Travelers), and Charles Carter a judgment of $500.00. Travelers also was ordered to pay a fee of $2,000.00 to counsel for the Lanes.

Travelers appealed insisting the Chancellor erred: (1) in holding the policy of insurance issued Lane was reinstated after cancellation and was in force at the time of the Lane-Carter accident; and (2) in holding the misrepresentations made by Lane in securing the policy of insurance were not made with intent to deceive and did not materially increase the risk of loss.

The evidence shows that Phoenix of Hartford refused to renew the automobile liability insurance policy it had issued Robert Lane. Within the month, on March 3, 1970, Lane made application for automobile liability insurance coverage with Travelers, through the Ron Jenkins Agency. The application showed that Lane had insurance coverage against physical damage with Phoenix of Hartford. The application form also called upon Lane to answer the following questions:

"2A. Has any company DECLINED, CANCELED or REFUSED to renew automobile insurance for any driver during the past three years.

\* \* \* \* \* \*

"5B. During the 3 year period preceding the date of this application, have you or any other person named in Item 5A been involved in an accident while operating an automobile resulting in damage to any property, including yours or his own, or in bodily injury or death OR been convicted of, forfeited bail for or pleaded nolo contendere to a moving traffic violation as a result of operating an automobile"

Lane answered both questions "NO."

Based on these answers and other information set out in the application form, an automobile liability insurance policy was issued by Travelers to Lane covering the period of March 3, 1970, to June 3, 1970.

Travelers instituted a routine investigation of Mr. Lane through the Retail Credit Company. The report by the Retail Credit Company revealed that Lane had had an

automobile accident within the three year period preceding his application for insurance with Travelers, and had had several citations for traffic violations, two being within the three year period preceding the application for insurance. The report also showed that Lane had been fined for shoplifting in 1962, and had been held for investigation of other criminal offenses.

On receipt of the report, Travelers had its agent, Ron Jenkins, write and ask Lane to surrender the policy issued him. When Lane did not do so, Travelers sent Lane a notice, dated April 15, 1970, that his insurance coverage was cancelled effective April 27, 1970.

On being apprised that Travelers was cancelling the policy of insurance it had issued him, Mr. Lane made inquiry of Mr. Curtis Hyatt concerning insurance coverage, and was referred by Mr. Hyatt to the P & L Insurance Agency. Incidentally, Mr. Hyatt was the agent that referred Lane to Travelers when Phoenix refused to renew Lane's automobile liability insurance policy.

Mr. Hyatt testified "he advised Lane that if he could not get insurance there, he (Mr. Hyatt) could get him insurance through the Assigned Risk Plan."

Mr. Lane testified he did not follow through on Mr. Hyatt's recommendation immediately, but "was trying to wait until (I) got the money."

Traveler's field office waited until May 7, 1970, to send notice of the Lane policy cancellation to the home office computer. By that time, Travelers, by computer, had sent Mr. Lane a "Continuation Declaration" which extended coverage for the three month period of June 3, 1970, to September 3, 1970. The "Continuation Declaration" contained a notice of premium due both for the extended period and the original policy period of March 3, 1970, to June 3, 1970.

Lane testified his reaction to the receipt of the "Continuation Declaration" was:

"Well, I was happy, you know. I said, 'Wow, you know. I told my wife, I said, you know, 'We have insurance now', you know. 'Evidently they made a mistake, you know, by sending us those letters about cancellation.' So we was considered that we was still covered, you know, under Travelers."

On May 17, 1970, several days after the receipt of the "Continuation Declaration", Mrs. Lane was involved in the accident in which the Carters were injured. Mr. Lane reported the accident to a representative of Travelers the following day, who, on checking with the agent Jenkins, informed Mr. Lane that his insurance had been cancelled and that he had no coverage against liability flowing from the May 17th accident.

That day, on advice of counsel, Mr. Lane went to the Jenkins Agency and tendered the premium called for in the "Continuation Declaration." Mr. Jenkins refused to accept the premium, but did accept $16.00, which represented the premium earned to the date of cancellation of the policy.

Subsequently, and after the present suit was filed by the Lanes, Travelers took the discovery deposition of Mr. Lane and discovered that, contrary to the statement made by Lane in his application for insurance, Phoenix of Hartford had refused to renew the automobile liability insurance policy it had issued Lane. Travelers then took the position in defending this suit, that the insurance policy issued Lane was void *ab initio*.

The Chancellor found from the above evidence that the mistake made by Travelers in sending the "Continuation Declaration" to Mr. Lane led Mr. Lane "to believe that he had insurance and that because he had insurance he needed to take no further steps, and that it was the fault of the insurance company that he was so led, and he should not be denied the protection that he thought he was afforded, and which he

probably was afforded by virtue of this continuation declaration."

■ From our examination of the evidence, and considering the fact the Chancellor had the opportunity to hear and see the witnesses as they testified, we cannot say the evidence preponderates against the Chancellor's findings on this issue. Neither can we fault the Chancellor's conclusion that the effect of Traveler's action in sending the "Continuation Declaration" to Mr. Lane was to reinstate the policy of insurance Travelers had sought to cancel and to restore to Mr. Lane the coverage he had on the issuance of the original policy.

■ It is generally recognized that an insurer will be estopped from denying that an insurance policy is in force where, by its course of dealing, or its open actions, it has induced the insured to pursue a course of conduct to his detriment. Appleman, Insurance Law and Practice, Vol. 16A, Sec. 9088, p. 327; 45 C.J.S. Insurance § 704, p. 671. See also Henry v. Southern Fire and Casualty Co., 46 Tenn.App. 335, 330 S.W.2d 18, wherein it is stated:

"'In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from the insurance agent's mistake, it must be the insurance company, his principal.'"

Having concluded that Travelers is estopped to deny the reinstatement of the policy of insurance it issued Lane, we are now faced with the question of whether the misrepresentations made by Mr. Lane in procuring the policy render the policy void *ab initio*.

"The cancellation of the policy by insurer is not a waiver of a ground of forfeiture, and, in the absence of fraud, the cancellation of a previous policy does not estop insurer to claim forfeiture of a subsequent policy substituted for it." 45 C.J.S. Insurance § 709, p. 678.

■ The Chancellor found that the false answers given by Mr. Lane in making application for insurance with Travelers were not made "with intent to deceive" and did not materially affect the risk of loss; that, consequently, the policy of insurance issued Lane by Travelers was not void *ab initio*. We think the evidence preponderates against the Chancellor's findings on both issues.

T.C.A. 56–1103 provides that:

"No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss."

In Robbins v. New York Life Insurance Company, 18 Tenn.App. 70, 72 S.W.2d 788, this court pointed out that:

"Under this statute [T.C.A. 56–1103] a policy may be avoided for actual intent to deceive *or* for materiality of a misrepresentation increasing the risk of loss. Although there may have been no actual intent to deceive, if the matter represented be such that, if the truth were known, the insurer would have been warranted in rejecting the application, the policy should be declared forfeited." (emphasis supplied).

■ If the misrepresentation made by the applicant for insurance is material to the risk, it is not necessary that the misrepresentation be made "with actual intent to deceive" the insurer to result in a forfeit of the policy. Bauer v. Mutual of Omaha Insurance Company, Tenn.App., 460 S.W. 2d 366.

Any representation in an application for insurance which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that "increases the risk of loss" within the meaning of T.C.A. 56–1103. Little v. Washington National Insurance Company, 34 Tenn.App. 593, 241 S.W.2d 838. And when it has been determined that the answers contained in the application were untrue it becomes a question of law for the court as to whether such misrepresentation materially "increases the risk of loss" within the meaning of the statute. Sloop v. Mutual of Omaha Insurance Company, 55 Tenn.App. 656, 404 S. W.2d 265.

Mr. Lane gave false answers to two questions in completing his application for insurance. The answer to only one of the question, in our opinion, is material to a decision in this suit—Question 2A which deals with cancellation and/or rejection of Mr. Lane as an insurance risk by another insurer. The falsity of Mr. Lane's answer to the other question—Question 5B dealing with the accident record of Mr. Lane, was known to Travelers at the time it attempted to cancel the policy and at the time it issued the "Continuation Declaration." There is also evidence that Lane's 1967 accident, standing alone, would not have prevented Travelers from issuing the policy of insurance.

As to Question 2A, however, the relationship of an applicant for insurance with its former insurer naturally and reasonably would influence the judgment of the insurer being called upon to issue a new policy of insurance, and is material to the risk. Pruitt v. Allstate Ins. Co., 92 Ill. App.2d 236, 234 N.E.2d 576; Southern Farm Bureau Casualty Ins. Co. v. Ausborn, 249 S.C. 627, 155 S.E.2d 902; State Farm Mut. Auto. Ins. Co. v. Anderson, 107 Ga. App. 348, 130 S.E.2d 144. See also USF&G v. Green et al., decided by this court on September 3, 1971.

Mr. Lane, by answering Question 2A falsely, concealed the fact that his former insurance carrier, Phoenix of Hartford, had refused to renew the automobile liability insurance policy it had issued him. The evidence also shows that this misrepresentation was made by Mr. Lane within a month after Phoenix had declined to renew the policy, and at a time when Mr. Lane admittedly was seeking a policy of insurance to replace the one that Phoenix had refused to renew. Mr. Lane's only explanation was that "I wasn't thinking it had been three years since this incident that happened with Phoenix." This explanation is not logical in the face of evidence that the Traveler's policy was to replace the Phoenix policy. The more logical explanation, and the one we think called for by the evidence, is that Mr. Lane intended to conceal from Travelers the fact that Phoenix of Hartford had refused to renew the automobile insurance policy it had issued him.

"Intent to deceive may be inferred from the making of a false representation with knowledge that it is false, and, if a false answer knowingly made is material, legal fraud results." 45 C.J.S. Insurance § 175(4), p. 175.

It is argued that Travelers and Phoenix of Hartford, having merged, Travelers had available to it the knowledge possessed by Phoenix and that Travelers should be penalized by failing to bring in Phoenix's records to show why the Lane policy was not renewed. The issue is not why Phoenix refused to renew Mr. Lane's policy, but the fact that the renewal was refused and that Mr. Lane knowingly concealed this fact from Travelers. The relationship between Phoenix and Travelers is not set out in any detail in the record. The evidence does show that files of Hartford were available to Travelers on inquiry. However, in view of the negative answer given by Lane to Question 2A, Travelers had no reason to make inquiry of Phoenix concerning the insurance

record of Mr. Lane and cannot be charged with knowledge that Phoenix had failed to renew the automobile liability insurance policy it had issued Lane.

"Before one can be charged with knowledge of facts available by investigation, there must be a reason or cause for the further investigation and the insurer must be put upon inquiry by some fact or information in possession of the insurer." Columbian National Life Ins. Co. of Boston, Mass. v. Rodgers, 10 Cir., 116 F.2d 705 at page 707, certiorari denied 313 U.S. 561, 61 S.Ct. 838, 85 L.Ed. 1521. See also Bauer v. Mutual of Omaha Insurance Co., Tenn.App., 460 S.W.2d 366 and Jefferson Standard Life Ins. Co. v. Webb, 56 Tenn.App. 314, 406 S.W.2d 738.

For the indicated reasons, the decree of the Chancellor must be reversed and the suit dismissed. Costs will be adjudged against Robert Lane and wife, Gloria Lane.

PARROTT and SANDERS, JJ., concur.