METROPOLITAN LIFE INS. CO. v. J. B. McGOWAN, Administrator.

Western Section.    November 9, 1925.

Certiorari denied by Supreme Court, March 13, 1926.

1. **Insurance.  Statements made in application must be true until policy delivered.**
    The statements made in the application for life insurance policy must be true not only when made, but must continue to be true until the policy is delivered and the premium collected.

2. **Insurance.  Statement of applicant that he had not been attended by a physician during last two years when he had been, is a breach of warranty.**
    In an action on a life insurance policy where the applicant stated in his application that he had not been attended by any physician during the two years next preceding the making of the application and the issuance of the policy, when he has been attended by a physician and had been an inmate of a hospital, held a breach of warranty of the application and rendered the policy issued thereon void.

3. **Insurance.  Application is part of the policy.**
    The application made for a life insurance policy is a part of the policy issuing thereon.

4. **Insurance.  Misstatement in application of more significance when no medical examination is required.**
    The fact that no medical examination is required or made in the issuance of industrial insurance policies by insurance companies makes misstatements as to material matter more significant.

5. Insurance. Any misstatement of fact in application which would influence the judgment of the insurer is material.

In an action on a life insurance policy any misstatements as to a fact in the application which would influence the judgment of the insurer in issuing the policy is material and will avoid the policy.

6. Appeal and error. Where there is no controversy in the evidence there is no issue for the jury.

In an action on a life insurance policy, held where there is no controversy in the evidence there is no issue to be submitted to the jury and it was an error for the court to refuse to direct a verdict for the defendant at the close of the proof of the plaintiff and at the end of all 'the evidence, where it clearly showed that the conditions of the policy had been violated as well as the conditions in the application, and that misrepresentation had been made, and that applicant at the time of making the application and the issuance of the policy was not in sound health and had been attended by a physician.

7. Insurance. Liability of the insurer depends upon fact.

The liability of the insurer does not depend upon the knowledge of the insured of soundness of health but upon the fact.

8. Insurance. "Sound health" and "good health" are synonymous.

Held that there is no material difference between "sound health" and "good health" as used in the life insurance policy.

9. Words and phrases. Sound health defined.

The phrase "sound health" within the life insurance policy exempting insurer from liability if insured is not in 'sound health means absence of disease of serious nature, or that directly tends to shorten life as contradistinguished from temporary ailment or indisposition.

Appeal in Error from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

· Reversed and dismissed.

J. P. M. Hamner, of Memphis, for plaintiff in error.

S. W. Polk, of Memphis, for defendant in error.

OWEN, J. J. B. McGowan, administrator of Samuel English, instituted a suit before a Justice of the Peace in Shelby county to recover $250 and 25% thereon as penalty on two insurance policies issued by the defendant Insurance Company, each policy being for $125, said policies being known as Industrial Insurance.

There was a trial before the Justice of the Peace appealed to the circuit court when the cause was submitted to the court and jury, and at the conclusion of all the testimony there was a motion for directed verdict by defendant, which was overruled. Also a motion for directed verdict by plaintiff, which was overruled. There was a verdict in favor of the plaintiff for $250 and $62.50 penalty.

The defendant filed a motion for a new trial. This was overruled and disallowed except upon the question of the verdict being excessive as to the extent of the penalty allowed. This was sustained and judgment reduced $62.50. Thereupon the plaintiff excepted to the remittitur of $62.50 and remitted under protest, and also appealed

from the judgment of the court allowing a remittitur. The plaintiff has assigned errors on the action of the court in ordering the remittitur, insisting that the same should be restored. The defendant has assigned errors in this court, the substance of the assignment of errors being there is no evidence to support the verdict of the jury and that the court erred in overruling defendant's motion for a directed verdict at the conclusion of all the evidence.

Sam English, a bachelor 58 years of age, applied to the defendant company for life insurance. His application was dated December 27, 1923. The application was given to an agent of defendant by the name of H. H. Cooper. The application was forwarded to New York City, the home office of the defendant, and two policies of $125 each were dated January 7, 1924, and forwarded from New York City to Memphis, Tenn., to the agent, H. H. Cooper, who, upon receipt of the same, delivered them to Sam English. Sam English made his home with the plaintiff McGowan, who is a nephew of Sam English. Sam English died April 28, 1924, or about three and a half months after receiving the policies. No medical examination was had of Mr. English when he applied for this insurance.

The question involved in this lawsuit is with reference to the condition of the health of the insured at the time the policy was issued, and at the time application was made for same.

It is the defendant's contention that the applicant was not in sound health at the time he made his application and when the policies were delivered, that he had within two years previous to the issuance of the policies and of the application been attended by physicians, and that he had been in the hospitals of Memphis during said two years; that it was a condition in the application that if mis-statements were made by the applicant as to these material facts, to-wit, as to the applicant's health, the policy would be voided and the policy also when issued so provided.

The insured died in the hospital for insane of Shelby county. He had been committed there about two weeks before his death. Dr. R. R. Davenport, who gave a physician's statement as to proof of death, showed that he was called to see the deceased the 25th of March, 1924, and his last visit was April 15, 1924, which would be ten days prior to the insured's death. He did not certify the death to the Board of Health. This physician's certificate or proof of death states that the deceased died of arteriosclerosis, that the duration of this disease from the doctor's personal knowledge was two months, and the duration from the history given was two years.

The application that was signed by English at the time he requested the insurance to be written is found in the record identified by the agent and witness, H. H. Cooper. The first question that was

asked and appears, and was answered, in the application is as follows:

"I have never had any of the following complaints or diseases: Apoplexy, asthma, bronchitis, cancer or other tumor, consumption, disease of the brain, disease of heart, disease of kidneys, disease of liver, disease of lungs, disease of urinary organs, dropsy, fistula, fits or convulsions, general debility, habitual cough, hemorrhage, insanity, jaundice, paralysis, pleurisy, pnemonia, rheumatism, scrofula, spinal disease, spitting or raising blood, ulcer or open sores, varicose veins, except none. I'am not blind, deaf or dumb, nor have I any physical or mental defect or infirmity of any kind, except none. I have stated all exceptions."

"3. I have not been under the care of any physician within three years, except (when exceptions are stated, give names of doctors, dates of attendance, and illness.) I have stated all exceptions and every case when I have consulted or received treatment from a doctor at his office or elsewhere. No."

"4. I have never been under treatment in any dispensary, hospital or asylum, nor been an inmate of any almshouse or other institution, except, I have stated all exceptions with times and places of such treatments. No."

"Q. Was that the answer to that question that Mr. English made to you at that time? A. No.

"Q. Was that his answer, or is that your answer to me? A. That is his answer.

"Q. Now, what is the very next thing on that application after where you have just finished reading? A. I hereby declare that these statements recorded above and on the reverse side hereof are true and complete, and I agree that any misrepresentation wilfully made shall render this policy void, and the policy shall not be binding on the company unless on its date I shall be alive and in sound health.

"Q. What is the next thing that immediately follows that on the policy? A. His signature.

"Q. Sam D. English's signature? A. Sam English.

"Q. Did he at any time state to you he had been in the Baptist Hospital in the early part of that month? A. No, sir.

"Q. Did he state to you that he had been in the Memphis General Hospital for a week or ten days in the early part of that month? A. No sir.

"Q. This application says it was executed on December 27, 1924, does that reflect the correct date? A. Yes, sir, the correct date.

"Q. Did he state to you that he had been in the General Hospital prior to that time? A. No, sir."

Evidently the question, ''was that the answer to that question that Mr. English made to you at that time,'' to which the witness Cooper answered ''No,'' is a typographical error, and we are of the opinion that the question propounded to the witness at the time was ''What was the answer to the question English made to you at the time,'' and the witness answered ''No.''

It was shown that the insured was in the Memphis General Hospital from December 4th to December 11, 1923. He was in the same hospital on a number of dates during 1921. It was also shown that he was in the Baptist Hospital in November, 1923.

Mr. McGowan, the nephew, his mother, Mrs. McGowan and sister of the deceased, testified that if the insured had any illness or serious disease they did not know anything about it, but their testimony is negative.

Dr. Turner, a witness for the plaintiff, testified that he treated the insured both at the General Hospital and at the Baptist Hospital for chronic sciatica, which was an affliction of the big sciatic nerve and runs down the back of the leg. He further testified the insured suffered from paralysis, that is, sciatic paralysis, that his left leg was slightly impaired. He testified that he did not consider he was treating the insured for a serious disease, that is, a disease that involved life and death. The witness testified "he was an elderly man, more or less of a chronic complainer, of different types of things. He came in the hospital and we gave him a good going over, and with the exception of the fact that he had an old body, which was pretty well worn out, in all places and all functions, we could not find anything definite except sciatic neuritis, on the right side, as I recall, in which the symptons so indicated, and then to rule out syphilis, why, we went ahead and did the usual laboratory routine, that is done in those cases.''

On cross-examination Dr. Turner testified as follows:

''Q. Would you say from your knowledge, personal knowledge of him, and the history of the case, whether or not he was in sound health any time during the year 1924? A. 1924?

''Q. Yes. A. I don't think I saw him in 1924.

''Q. As far as you saw him? A. In 1923 a while—

''Q. Assume it was in December, 1923, would you say, on January the 7th, 1924, that he was in sound health, if his condition was as it was at the time you saw him in December, 1923? A. No.

''Q. You would not? A. I wouldn't think he would ever be in sound health.

''Q. Would you say the condition of which he was suffering, and which you observed personally of Samuel D. English, if it had lasted for some time or not? A. I would say it was one of rather long standing, yes sir.''

There was proof that the insured was treated for smallpox but just when how long before he was insured did not appear. He also had bronchitis and some temperature. It is not definite when this occurred, but the undisputed facts show that the care of physicians within three years, that' he had been under treatment in a hospital the very same month that the insurance was applied for, and that he had rheumatism, that he had paralysis and that he had general debility at the time he applied for the insurance and when he received the policy.

"The statements made in the application must be true not only when made, but must continue to be true until the policy is delivered and the premium collected. Harris v. Insurance Co., 130 Tenn., 325.

"Since the applicant stated in his application that he had never been attended by any physician during the two years next preceding the making of the application and the issuance of the policies, and since he had been attended by said physicians and been an inmate of the hospitals, and in addition thereto had had the disease of rheumatism, this constituted a breach of warranty of the application and rendered the policies issuing thereon void." Harris v. Insurance Co., 130 Tenn., 325; Life & Casualty Co. v. King, 137 Tenn., 685.

The application is a part of the policy issuing thereon. Life & Casualty Co. v. King, 137 Tenn., 685.

"The fact that no medical examination is required or made in issuance of industrial insurance policies by insurance companies, makes misstatements as to material matters more significant. Life & Casualty Co. v. King, 137, Tenn., 685.

"The courts of Tennessee will hold any misstatement as to a fact in the application, which would influence the judgment of the insurer in issuing the policy, to be material. Lauderdale v. Insurance Co., 94 Tenn., 635.

"The submission, by the trial judge to the jury of the question of sound health where there was no evidence to contradict same, and the plaintiff being bound by the testimony of his own witnesses, even though there were slight discrepancies or variations, was error. Life & Casualty Co. v. King, 137 Tenn., 685.

"Where there is no controversy in the evidence, there is no issue to be submitted to the jury, and it was error for the court to refuse to direct a verdict for the defendant at the close of the proof of the plaintiff and at the end of all of the evidence, where it clearly showed that the conditions of the policy had been violated as well as the conditions in the application, and that misrepresentations had been made, and that applicant at the time of making the application and the issuance of the policies was not in sound health and had been attended by a physician. Life & Casualty Co. v. King, 137 Tenn., 685."

The liability of the insured does not depend upon the knowledge of the insured of his soundness, but upon the fact. Metropolitan Life Ins. Co. v. Howe, 62 Ohio, 204.

In the case of Metropolitan Life Ins. v. Chappell, 151 Tenn., 299, it was held that "a provision in a life insurance policy that insurer assumed no obligation thereunder, unless insured was in sound health at date of policy, was valid and binding on insured."

It was further held there is no material difference between sound health and good health as used in life insurance policies. "The phrase 'sound health' within life insurance policy, exempting insurer from liability if insured is not sound health at date of policy, means absence of disease of serious nature, or that directly tends to shorten life as contradistinguished from temporary ailment or indisposition."

"One is in 'good health' within a life insurance policy when he or she has no grave, important or serious disease, and is free from any ailment that seriously affects general soundness or healthfulness of his or her system."

"Where undisputed proof shows that insured died of Bright's disease one month after issuance of policy denying liability unless insured was then in sound health, which disease was of long standing, deceased was not in 'sound health' at date of policy, and insured's knowledge or lack of knowledge thereof was immaterial."

The undisputed facts show that at the time the applicant signed his application he was suffering from serious disease, that he was not in good health, that he had been in the General Hospital the very same month he sought the insurance, and we are of the opinion that under the undisputed facts the company was not liable for the insurance; that its promise was not absolute, but the promise to pay was conditional, and that the existence of sound health in the insured on the date of the policy is the condition on which the promise to pay was made. It is the fact of sound health of the insured which determines the liability of the defendant in this character of policy, not apparent health—or his or anyone's opinion that he was in sound health.

We are of the opinion that it was error in the trial judge not granting the defendant's motion for a directed verdict.

The assignment of error of the defendant is sustained and the judgment of the lower court is reversed, and plaintiff's suit dismissed.

The defendant will recover of the plaintiff, the administrator, the cost of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.