JEFFERSON STANDARD LIFE INSURANCE
COMPANY, Plaintiff-in-Error, v. JAMES JUTSON
WEBB, Defendants-in-Error.—406 S.W.(2d) 738.

Middle Section. April 1, 1966.

Certiorari Denied by Supreme Court October 3, 1966.

James O. Bass, Jr., of Bass, Berry & Sims, Nashville, for plaintiff in error.

David C. Rutherford, of Stockell, Rutherford & Crockett, Nashville, for defendant in error.

PURYEAR, J. This is a suit on a policy of insurance on the life of a new-born infant, issued without medical examination. The defense is that false answers were made to two questions in the application for insurance, concerning the condition of the child's health and that

such misrepresentation concerned a matter which increased the risk of loss and, therefore, voids the policy.

The insurer has perfected this appeal and filed the following assignments of error:

## I

"The Court erred in failing to find as a fact that the answer to question 4 in the insurance application was false because the preponderance of the evidence requires such a finding.

## II

The Court erred in failing to find as a fact that the answer to question 6.A in the insurance application was false because the preponderance of the evidence requires such a finding.

## III

The Court erred in failing to dismiss the case because the misrepresentations concerned a matter which increased the risk of loss and therefore void the policy as a matter of law.

## IV

The Court erred in holding that the defendant is estopped to rely on the defense that the insured was not in sound health at the time of the application or issuance of the policy."

The child, whose life was insured, was born on April 15, 1963, and at the time of birth, Doctor Richard P. Taber, the child's pediatrician, examined him and discovered that he had a heart murmur, and on the day the mother and child left the hospital, which was only a few

days after birth, Doctor Taber told the mother about the existence of the heart murmur.

The mother testified that when Doctor Taber told her about the murmur, he also told her not to worry, that they would follow it along and that it would probably go away.

Dr. Taber testified that he didn't recall whether or not he told her it would go away.

On or about May 20, 1963, Calvin L. Baker, agent for the insurer, whom the Webbs knew, accepted the application for the insurance policy in question. The policy was issued on May 27, 1963.

The application form contained two questions which the insurer insists were falsely answered and that because of such misrepresentations it was induced to issue the policy, which it would not have otherwise done if the questions had been answered correctly. These questions and answers are as follows:

"Question 4. Has any physician ever given an unfavorable opinion of the child's health?

Answer: No.

Question 6-A: Has the child any deformity, physical or mental defects?

Answer: No."      (Exhibit No. 1)

This application was signed by the mother and also the father, James Jutson Webb, who is the defendant-in-error, although the questions were actually answered by the mother.

On January 17, 1964, the child was examined by Doctor Charles Gordon Rennick Sells, who is a specialist in Pedi-

atric Cardiology. From such examination, Doctor Sells concluded that the child had a very serious heart trouble and determined that a cardiac catheterization should be made to determine whether or not heart surgery was necessary. This cardiac catheterization consisted of insertion of a plastic tube into the chambers of the heart through a vein and during the process thereof, the child died of heart failure on January 21, 1964.

This suit to recover on the insurance policy was filed in General Sessions Court of Davidson County by the defendant-in-error here, who was the beneficiary, to recover the face amount of the policy, which is $1,000.00. The trial in General Sessions Court resulted in judgment for $1,000.00 against the insurer and the case was appealed to Circuit Court by the insurer, where it was tried de novo and without the intervention of a jury.

Following the trial in Circuit Court, the trial judge found in favor of defendant-in-error and awarded judgment for $1,000.00 and costs against the insurer, from which judgment the insurer has prayed and perfected its appeal to this Court.

The learned trial judge held that the negative answers to questions hereinabove set forth were not fraudulently made or made in bad faith, nor was there any concealment as required to invalidate the policy, and that the failure of the agent to confer with Doctor Taber, whose name and address was given in the application, and ascertain from him the state of the child's health, estopped the insurer from setting up the defense upon which it relied in this case. (Tr. p. 10)

The last paragraph of the application form contains the following provision:

"I expressly waive, on behalf of myself and of any person who shall have or claim to have any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me or the child, or who may hereafter examine me or the child, from disclosing any knowledge or information which he thereby acquired, and agree that a photo copy of this waiver shall be as valid as the original."

(P. 5 of Brief of Defendant-in-Error)

Counsel for defendant-in-error argues with much force that since Mr. and Mrs. Webb gave the insurer express permission, by the above quoted provision in the application, to consult Doctor Taber and obtain from him any information concerning the health of the child, and since the insurer failed to avail itself of this right and consult Doctor Taber, it is now estopped to assert the defense upon which it relies in this case. Industrial Life and Health Insurance Company v. Trinkle, 30 Tenn.App. 243, 204 S.W.2d 827, and Industrial Life and Health Insurance Company v. Trinkle, 185 Tenn. 434, 206 S.W.2d 414, are cited by counsel in support of this insistence.

We think Section 56-1103, Tennessee Code Annotated, and particularly the latter portion of such code section applies to this case. This Code Section is as follows:

"56-1103. *Misrepresentation or warranty will not avoid policy—Exceptions.*—No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresenta-

tion or warranty is made with actual intent to deceive, *or unless the matter represented increase the risk of loss.*'' (emphasis added)

■■ There is no evidence in the record from which we can conclude that the answers to the foregoing questions were given by Mrs. Webb with any intent to deceive the insurer, but it is our opinion that the negative answers were false, and the true condition of the child's health at the time the application was signed and the policy was issued increased the risk of loss, which condition was not known to the insurer or to its agent. Misrepresentation which increased the risk of loss, will void the policy whether or not made wtih actual intent to deceive. National Life & Accident Ins. Co. v. Lewis, infra, 19 Tenn.App. p. 466, 89 S.W.2d 898.

The fact that the policy would not have been issued if the insurer had known of the heart murmer is uncontroverted. The testimony of the insurer's physician and medical director, Doctor Van W. Gunter, is introduced in the form of a letter from Doctor Gunter to counsel for plaintiff-in-error, which letter contains the following statement:

''I believe I can state factually that to the best of my knowledge, it is the practice of the insurance industry generally not to accept new-born babies for insurance on any basis when they are born with a heart murmur. The reason for this is twofold in that normally mortality is rather high even in normal new-born infants, increasing to about the 9th to the 11th year of life and then steadily decreasing. Mortality is increased rather markedly in new-born infants with a heart murmur. It is true that some of these murmurs turn out to be benign, disappearing early in life. These murmurs,

however, are usually soft in character, and we can surmise that this is probably the so-called functional murmur. However only time will tell, and therefore we decline such an application on an infant until such time has elapsed that we are certain this is a functional murmur either by way of the child's progress, through special tests and examinations, or simply by disappearance of the murmur.''

If Mrs. Webb had simply told the insurer's agent what she says Doctor Taber told her about the existenec of the heart murmur, the policy would not have been issued.

■ Regardless of whether she considered Doctor Taber's report to her as being an unfavorable opinion of the child's health or as evidence of any deformity, physical or mental defect, it was her duty to disclose to the insurer's agent what she had been told about the existence of the heart murmur.

Although Doctor Sells and Doctor Taber both testify that it is sometimes difficult to determine whether or not a murmur in the heart of infant child is serious, we are quite certain that if the insurer had asked Doctor Taber about the condition of the child's health, he would have disclosed the existence of the murmer and the policy would not have been issued.

In this connection, we quote a very pertinent portion of Doctor Taber's testimony as follows:

''A. It is difficult without other laboratory tests to be sure that a heart murmur is actually a physical defect or infirmity because some of these murmurs will clear up of their own accord, it will disappear. It doesn't always mean there is some major deformity with the heart, though most of the time it does. We hear mur-

murs during the first year that will disappear and the heart will be a perfectly sound heart. There are a couple of openings or one opening anyway that doesn't close right at birth but will close maybe in a week or a month or several months before it closes and then the murmur will disappear. I think it would be difficult to say that any newborn infant with just the murmur you are hearing, whether it is going to be a long term heart defect or whether it is something that will clear up.

Q. Well, at the time, until you can determine whether or not it will clear up, will you state whether or not you considered it to be an infirmity at least for the time being?

A. Yes, until proven otherwise."

(Dep. Dr. Taber, pp. 5-6)

Can it be said that Mrs. Webb was under any less obligation to disclose to the insurer what she says Doctor Taber told her about the child's heart than it was for Doctor Taber to disclose what information he had?

We do not think so, and as we have heretofore stated, if Mrs. Webb had only disclosed to the insurer exactly what she insists Doctor Taber told her, the policy would not have been issued.

■ Certainly this was a matter which would naturally and reasonably influence the judgment of the insurer and which increased the risk of loss. Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 528, 194 S.W. 581, L.R.A.1917E, 554; Volunteer State Life Insurance Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270; Metropolitan Life Insurance Co. v. McGowan, 2 Tenn.App. 341; Norvill v. Mutual Benefit Health Association, 14 Tenn.App. 396;

Robbins v. New York Life Ins. Co., 18 Tenn.App. 70, 72 S.W.2d 788; National Life and Accident Ins. Co. v. Lewis, 19 Tenn.App. 459, 89 S.W.2d 898; Little v. Washington National Ins. Co., 34 Tenn. App. 593, 241 S.W.2d 838.

■ The fact that no medical examination is required or made in issuance of industrial insurance policies, makes misrepresentations as to material matters more significant. Metropolitan Life Ins. Co. v. McGowan, supra, 2 Tenn.App. at p. 346. Although the policy in question here is not an industrial policy, we think the rule should be the same, since no medical examination was required or made.

■ Counsel for defendant-in-error insists that the insurer is estopped to rely upon its defense in this case, since it made no effort to ascertain the condition of the health of the child, despite the fact that the name of the attending physician, Doctor Taber, was listed in the application and permission given to obtain pertinent information from him.

We cannot agree with this contention. Since the answers given to the above quoted questions were negative, why was it necessary for the insurer to consult Doctor Taber, since by the answers to the questions, the parents had told the insurer that their child was in good health and free from any deformity, physical or mental defects?

We think the insurer could only be expected to consult the physician in the event the parents disclosed some fact which made it advisable to do so before issuing the policy, or in the event the child appeared to be unhealthy.

The defendant-in-error relies heavily upon Industrial Life and Health Ins. Co. v. Trinkle, supra, wherein it was held as follows:

The failure of the agent to confer with the doctor to ascertain the state of health of the insured estops the Defendant from setting up the defense to an action on the policy that the insured was not in sound health when the application was taken or the policy delivered.

However, we think the Trinkle case is distinguishable from the instant case, since in the Trinkle case the insurance policy was issued on the life of an infant who was born prematurely and who was sick in the hospital at the time of the delivery of the policy. In that case the child's parents told the insurance agents of the premature birth at the date of the application and also told the agents the child was sick when the policy was delivered.

In the instant case, defendant-in-error does not even contend, and there is no evidence in the record, that the insurer's agent was informed of the child's heart murmur, or that the agent had knowledge of any facts which would naturally lead to a discovery of such condition.

The evidence shows that the appearance of the child was healthy and normal and there was nothing about its appearance that would lead the agent to believe that further inquiry should be made.

Even if it be conceded for the purpose of argument, that the information which Doctor Taber gave the parents about the heart murmur was not an unfavorable opinion of the child's health, about which inquiry was made in question four, we conclude that the answer to question 6-A was false, because the great preponderance of the evidence in this case shows that the heart murmur, which existed at the time the application was made and the policy issued, of which the parents were made aware by Doctor Taber, constituted a false answer, upon which

the insurer relied, and that the heart murmur increased the risk of loss, which renders the policy void.

For the foregoing reasons, the assignments of error are sustained, the judgment of the trial court is reversed and the case dismissed at the cost of defendant-in-error, including the cost of this appeal.

Shriver, J., concurs.

Humphreys, J., dissenting.

HUMPHREYS, J. (dissenting). I would affirm the judgment of the lower court.

I think it is quite important to keep in mind that Question 4 did not ask Mrs. Webb to state what the child's physician had said with respect to the child's health, but asked whether any physician had "ever given an unfavorable opinion of the child's health?"'

If the inquiry had been what Mrs. Webb had been told, then I would concur in the majority opinion. However, in view of the nature of the question, and Mrs. Webb's answer thereto, I cannot.

The question, "has any physician ever given an unfavorable opinion of the child's health?", asked for nothing more than Mrs. Webb's evaluation of Dr. Taber's final statement to her with respect to her child. And, under Mrs. Webb's sworn testimony, as was found by the trial judge, Dr. Taber did no more than tell Mrs. Webb the child had a heart murmur, that there was no cause for worry, since he believed the heart murmur would clear up in time.

I do not consider this such an unfavorable opinion of the child's health as that the mother should have had it in

mind and should, herself, have thought it to be the kind of unfavorable opinion the policy question was asking about.

Upon fair evaluation, instead of it being an unfavorable opinion, as it was given to Mrs. Webb and as she understood it, she was *not to worry about it as the doctor believed it would clear up in time.*

I am aware that Dr. Taber in rationalizing on this matter, gave evidence somewhat to the contrary but, I am also aware that he prefaced his testimony by stating that he did not remember what he had said to Mrs. Webb. And, all of his evidence to the contrary of Mrs. Webb's is made from the standpoint of the child's later death from a heart involvement.

Since the trial judge found as a fact that Dr. Taber did advise Mrs. Webb as she testified, *that there was no cause for worry,* I think this Court is bound to take the trial judge's finding.

It is the settled rule that the credibility of witnesses is for the trial court, and an appellate court will not disturb the trial judge's finding in regard thereto, except upon documentary or other like evidence. Early v. Street, 192 Tenn. 463, 241 S.W.2d 531; Finks v. Gillum, 38 Tenn.App. 304, 273 S.W.2d 722; Allen v. Goldstein, 40 Tenn.App. 308, 291 S.W.2d 596; Hall v. Britton, 41 Tenn.App. 72, 292 S.W.2d 524.

While it is unquestionably the rule that a life insurance policy may be voided for a material misrepresentation increasing the insuror's risk of loss, without the element of wilful fraud or deliberate intent to deceive, Robbins v. New York Life Ins. Co., 18 Tenn.App. 70, 72 S.W.2d 788, this very statement of the rule contemplates that there must be a material misrepresentation. And, that element

is totally lacking in this case since Mrs. Webb did no more than give her honest evaluation of the doctor's reassurance to her that she need not worry about the child's condition.

I think it should be noted that it lies exclusively within the power of the insurance company to word the questions in its policies so as to exact the information needed. And the asking of questions that do not exact explicit answers ought not to be encouraged by interpretations of the intent of the questions in favor of the insuror. If heart murmurs make infants uninsurable, an exact question could and should be asked in regard thereto.

It seems hardly fair to forfeit the policy when the mother of an infant child who is the picture of health, as this baby was, places a favorable interpretation on a reassuring statement made to her by her doctor in answer to an inexact question—a question which allows the company to have it both ways.

The importance of this proposition is pointed up by the majority opinion which holds that Mrs. Webb was obligated to relate to the agent taking her application the statement made to her by the baby's doctor. The point I seek to make is that she was not asked this question, although she could have been. Yet, we are forfeiting her policy as though she had been. In other words, an inexact question is being construed more favorably to the insurer, than to the insured and under all of our cases is a mistake.

I remember when insurance policies asked exact questions. Of course, some of these questions discouraged applications for insurance. But when they were answered the insured and the insurer both knew where they stood.

Being of this opinion, it necessarily follows that I cannot agree with the part of the opinion which would forfeit the policy because Mrs. Webb answered "no" to the question, whether the child had "any deformity, physical or mental defects".

Since Mrs. Webb's baby was the picture of health, apparently perfect in its body and mind so far as she could see and tell, and had only a condition with respect to which her doctor had reassured her as above indicated, her negative answer to this question could not forfeit the policy.

T.C.A. sec. 56-1103 was long ago said to be remedial in nature, intended to relieve against the hardships arising from the enforcement of the common law as to warranties in insurance policies. Hartford Life Ins. Co. v. Stallings, 110 Tenn. 1, 72 S.W. 960; Continental Fire Ins. Co. v. Whitaker & Dillard, 112 Tenn. 151, 79 S.W. 119, 64 L.R.A. 451; Stubblefield v. Mutual Benefit Health & Acc. Ass'n., 11 Tenn.App. 411. So, that a policy cannot be avoided under this statute simply because the facts as they develop after the policy has been issued are contrary to the facts as they appear in the light of the applicant's answers. But, the policy can only be forfeited under the statute when in fact there has been a misrepresentation. Where there is no misrepresentation, and the questions are honestly answered according to the best knowledge of the insured, there can be no forfeiture or avoidance of the policy.

It would not be right to conclude this opinion without mentioning that, although after the baby died Dr. Taber had something to say about what he likely would or would not have done or said, it is still a fact that the baby's physical condition made so little impression on him that

he was unable to recall just exactly what he did say to Mrs. Webb. And this, in and of itself, as much as anything else, sustains and justifies Mrs. Webb's conclusion that she had not been given an unfavorable opinion concerning the child's health.

So, being convinced there was no misrepresentation of the facts as known to Mrs. Webb, I would affirm.