# LINCOLN AMERICAN LIFE INSURANCE COMPANY, Appellant-Defendant, v. REBECCA STEPHENS, Appellee-Complainant. — 445 S.W.2d 910.

Eastern Section. May 15, 1969.

Certiorari Denied by Supreme Court October 6, 1969.

Roy Keathley, Heiskell, Donelson, Adams, Williams & Wall, Memphis, J. W. Dietzen, of Dietzen, Parks & Dietzen, Chattanooga, for appellant-defendant.

H. M. Vaughn, Chattanooga, for appellee-complainant.

PURYEAR, J. This is a suit on a policy of insurance upon the life of Cleveland Stephens, issued without medical examination, and we will refer to the parties herein as complainant and defendant as they were designated in the trial Court.

By written application dated October 7, 1965, the insured, Cleveland Stephens, then age 26, applied to the defendant insurance company for a policy of life insurance. On October 27, 1965, the defendant issued its policy of life insurance numbered 25123 for the face amount of $7,381.00 upon the life of said Cleveland Stephens and the beneficiary named in said policy was the complainant herein, Rebecca Stephens, sister of the insured.

The annual premium for said policy was $302.51 payable for a period of twenty years. The insured executed a note for the first year's premium, which note was eventually acquired by Roger Church, Inc.

On the 22nd day of January, 1966, the insured died and the complainant herein filed a claim to collect the proceeds of the policy, the payment of which claim was refused by the defendant upon the grounds the insured made a material misrepresentation of fact in the application for insurance by denying that he ever had tuberculosis.

Defendant tendered return of the first annual premium for $302.51, which tender was refused by complainant.

This suit was filed on March 8, 1968, and in the original bill, the complainant sought recovery of the face amount of such policy, $7,381.00, together with interest, plus the

first annual premium and a twenty-five percent penalty. In her bill, complainant also prayed for a reformation of the incontestable clause of the policy, averring that said clause did not conform to the requirements of T.C.A. sec. 56-1111(3).

To this bill, the defendant filed a demurrer to the portion thereof seeking reformation of the policy, which demurrer was overruled.

The defendant then filed an answer in which it relied upon the defense that the policy was void because of a material misrepresentation made by the insured in his application for insurance to the effect that he had never had or been treated for tuberculosis, when, in fact, he had been admitted to the Tennessee Tuberculosis Hospital in 1960 with a far advanced active case of tuberculosis and had remained there until February, 1962.

In this answer, defendant further averred that the policy provisions were not in conflict with T.C.A. sec. 56-1111(3).

To the answer of defendant, the complainant filed a replication stating, among other things, that she did not admit the misrepresentation averred in defendant's answer and that under the applicable law the defendant was barred from making such a defense.

The case was tried upon the pleadings, a written stipulation of facts and the oral testimony of two witnesses, one of whom was Mr. Owen C. Leslie, an official of another insurance company, Provident Life and Accident Insurance Company. However, the Chancellor held that the testimony of Mr. Leslie was incompetent and he therefore refused to consider it. So, Mr. Leslie's testi-

mony is included in the bill of exceptions only for the purpose of having it considered upon this appeal.

As a result of the trial, the Chancellor found in favor of the complainant and awarded her a decree for recovery of the face amount of the policy, $7,381.00, and interest from May 12, 1966, but denied recovery of penalty.

From this decree, the defendant has appealed and filed seven assignments of error insisting that the trial Court erred as follows:

(1) In holding as a matter of law that under the provisions of T.C.A. sec. 56-1103 the defendant was required to prove an actual intent to defraud before the misrepresentation made by the insured would void the policy of insurance. (2) In holding that the defendant failed to prove the insured made a material misrepresentation in his application for insurance. (3) In holding that the defendant was estopped from asserting its claim of forfeiture of the policy, since it was put on notice of such facts as would require it to make further investigation. (4) In failing to dismiss so much of complainant's bill as sought to reform the insurance policy to conform with the requirements of T.C.A. sec. 56-1111(3). (5) In holding that the testimony of John Clay, the agent who sold the insurance policy, would have supported the complainant's claim if the testimony of said agent had been offered. (6) In refusing to consider the testimony of Owen C. Leslie, Chief underwriter for Provident Life and Accident Insurance Company, regarding underwriting practices in the insurance industry. (7) That the evidence preponderates against the decree of the trial Court.

The pertinent facts of the case are uncontroverted and appear from the record to be as follows:

In June, 1960, the insured, Cleveland M. Stephens, consulted with Doctor James M. Hayes of Chattanooga, Tennessee, and was diagnosed as having an advanced case of tuberculosis. Thereafter, in the year 1960, the insured was confined in Erlanger Hospital of Chattanooga for a period of time for which period of time he received treatment for tuberculosis.

On or about August 23, 1960, the insured was admitted to the Tennessee Tuberculosis Hospital in Chattanooga with an admitting diagnosis of "fair advanced bilateral active pulmonary tuberculosis." While in the hospital he had surgery for treatment of such tuberculosis on three occasions and, according to the hospital records he made a good recovery therefrom.

Because of his history of tuberculosis, the insured was checked by the Hamilton County Health Department on a regular basis between March, 1962 and June 18, 1963, but no active pulmonary tuberculosis was indicated from examination by the Health Department on the last examination which was on June 18, 1963.

On October 7, 1965, the insured applied to the defendant through one of its agents, John Clay, for a policy of life insurance in the amount of $7,381.00, but no medical examination was requested by the defendant or its agent.

The written application for such insurance policy contains the following question:

"Have you ever had or been treated for heart trouble or high blood pressure; cancer, diabetes, tuberculosis,

epilepsy or nervous disorder; stomach trouble or any ailment of the kidneys, gall bladder or liver?''

Opposite this question there appears in the application two boxes or check marks, one box being designated ''yes'' and the other designated ''no'' and a check mark appears in the box designated ''no''.

The agent, John Clay, did not testify in the case and there is no evidence that he or any other representative of the company knew or had reason to believe that the insured ever had or was treated for tuberculosis.

At some time between the date of the application and the date the policy was issued, the defendant requested from the Memphis office of American Service Bureau a confidential nonmedical report on the insured which report includes questions about the financial status, health, personal habits and reputation of the insured.

The only pertinent portion of this report, which is dated October 2, 1965, is as follows: ''He is in good health, but learned that he had a back ailment when living at permanent home address of 630 E. 5th St. Chattanooga, Tennessee. It was not known to what extent or if he had to have surgery. * * * If further information as to back injury is desired from Chattanooga, please advise, and we will transfer to that point for this information.''

Mr. S. Harris Finley, Assistant Vice-president and chief underwriter of the defendant, Insurance Company, testified orally in the case and the pertinent portion of his testimony is as follows:

''Q. Question 10, of course, speaks for itself, Mr. Finley, does question 10 make reference to the disease of tuberculosis?

A. Yes, sir, it does.

Q. Omitting—omitting the other diseases referred to, what is the gist of the question 10 with respect to the disease of tuberculosis?

A. The question says, have you ever had or been treated for tuberculosis.

Q. What answer is given on this application for life insurance by Mr. Stephens?

A. A negative reply, no.

Q. How is that answer made, by checking a block?

A. By check marks in the block by the side of no.

Q. Is that application signed by Mr. Stephens?

A. Yes, sir.

Q. Mr. Finley, at the time that the company issued this policy which forms the basis of this suit, did the company have any knowledge whatsoever that Mr. Stephens had in the past suffered from pulmonary tuberculosis?

A. No, sir, we did not.

Q. Mr. Finley, had the company known that Mr. Stephens—

MR. VAUGHAN: (Interposing) If the Court please, that calls for a conclusion of the witness, I object to that, if the company had known.

THE COURT: Well, that would go to whether or not it would be an acceptable risk, overrule the objection.

BY MR. DIETZEN:

Q. Mr. Finley, had the answer to the question 10 on the application been, yes, instead of, no, and had the company determined that in the year 1960, a physician in Chattanooga, Tennessee, had diagnosed Mr. Stephens as having an advanced case of tuberculosis, that in the year 1960, he was confined in Erlanger Hospital for the treatment of tuberculosis, that on August 23rd, 1960, he was confined in the Tennessee Tuberculosis Hospital in Chattanooga, Tennessee, with admitting diagnosis, for advanced bilateral active pulmonary tuberculosis, and while in the last-mentioned hospital, he had surgery for treatment of tuberculosis on three occasions, and had the company known that he was thereafter checked by the Office of the Hamilton County Health Department because of his history of tuberculosis until July the 18th, 1963, had that information been revealed to the company, would the company have issued this policy of insurance?

A. No, sir.

Q. Why not?

A. Because, had we known the information that you have just repeated, it would have increased the risk, and the company could not have issued the policy that was issued on the basis that it was issued, for the premium it was issued for.

Q. Have you studied extensively in the underwriter's field, and worked extensively in the underwriting field?

A. Yes, sir, for the past eight years.

Q. Have you become familiar with the practice of the life insurance industry generally?

THE COURT: Let's confine it to this particular company.

BY MR. DIETZEN:

Q. As a life underwriter—one moment, Your Honor. Under any circumstances, Mr. Finley, would this policy for that premium have been issued to Mr. Stephens if these facts were known?

A. No, sir.'' (Pp. 72, 73, 74 B. of E.)

Although the proposition is raised in the fourth assignment of error, we will first discuss this proposition of whether or not the incontestable clause in the policy of insurance complies with T.C.A. sec. 56-1111(3). This provision of the policy is included in paragraph 10 of the general provisions thereof as follows:

"10. Incontestability. This policy shall be incontestable after it has been in force during the lifetime of the insured for two years from the Date of Issue except for non-payment of premiums. This clause shall not apply to any additional provisions which may be attached hereto providing for disability benefits or any additional benefits in the event of death by accidental means.''

No suit was ever filed by the defendant insurance company to contest the policy in question and the instant suit was filed by the complainant more than two years after the policy was issued.

However, it is conceded that the insured died within much less than two years after the policy was issued, in

fact, only three months after issuance thereof. It is also conceded that he did not die of tuberculosis.

The complainant insisted in the trial Court, and insists here, that, since the defendant did not file any suit to contest the policy within two years after it was issued, then it cannot contest the policy in the instant suit, since this suit was filed more than two years after date of the policy.

The cases cited by complainant's counsel in support of this position were all decided prior to 1953, and during that period of time when the statute regarding the incontestable provisions of insurance policies was Williams Code, Section 6179, which provided, among other things, as follows:

"No policy of life insurance shall be issued in this state or be issued by a life insurance company organized under the laws of this state unless the same shall contain the following provision:

(3) A provision that the policy shall constitute the entire contract between the parties, and shall be incontestable after two years from its date, except for non-payment of premiums and except for violations of the conditions of the policy relating to naval and military services in time of war."

In 1953, Section 6179 of Williams Code was superseded by T.C.A. Section 56-1111 which contains, among other things, the following provision:

"56-1111. No policy of life insurance shall be issued in this state or be issued by a life insurance company organized under the laws of this state unless the same shall contain the following provisions: * * *

(3) A provision that the policy shall constitute the entire contract between the parties, and shall be incontestable after it shall have been in force *during the lifetime of the insured for a specified period, not more than (2) years from its date,* except for non-payment of premiums and except for violations of the conditions of the policy relating to naval and military services in time of war." (Emphasis supplied.)

Therefore, the cases cited by the complainant in support of her insistence as to the incontestable clause of the policy being in conflict with the statute are not applicable to this policy, which was written after 1953.

■■ So far as we have been able to ascertain, the new language "during the lifetime of the insured for a specified period, not more than two (2) years from date" has not been applied in any reported Tennessee case, but this is probably because there is nothing ambiguous about the language, it appearing to us that the period of incontestability must expire during the lifetime of the insured.

Some other States have statutes similar to 56-1111(3) and the Appellate Courts of such States have interpreted their statutes to the effect that the death of the insured within the specified period tolls the time limitation and thereafter the insurer may contest for fraud or material misrepresentation at any time. Equitable Life Ins. Co. v. Mann, 229 Iowa 945, 295 N.W. 461; National Life & Accident Ins. Co. v. Preston, 194 Ga. 583, 22 S.E.2d 157; also see opinion of the Fifth U. S. Circuit Court of Appeals in Reliance Life Ins. Co. of Pittsburgh v. Everglades Discount Co., 204 F.2d 937.

Probably the case from another jurisdiction which is more nearly parallel to the situation presented here is Sun Life Assur. Co. of Canada v. Allen, 270 Mich. 272, 259 N.W. 281, wherein the Supreme Court of Michigan considered a 1929 amendment to the statute of that State.

Prior to 1929, Michigan had a statute which provided that such a policy of insurance "shall be incontestable after two years from its date."

The Michigan Court said:

"The almost uniform holding is that where the provision requires that the policy shall have been 'in force' or 'in force during the lifetime of the insured' for a certain period, the death of the insured within the period forever bars its completion." Sun Life Assur. Co., supra, p. 285.

The fourth assignment is sustained.

■ The trial Court held that the defendant failed to prove the insured made a material misrepresentation in his application for insurance and this holding is assailed by the second assignment of error.

We think the evidence preponderates against this conclusion of the trial court and the reasoning which that Court applied. Jefferson Standard Life Ins. Co. v. Webb, 56 Tenn.App. 314, 406 S.W.2d 738 (1966), is applicable to the case at bar. In that case, the parents of an infant child with a heart murmur gave negative answers to two questions appearing on the application for insurance as to whether or not a physician had ever given an unfavorable opinion of the child's health. In denying recovery upon the insurance policy, this Court held as follows:

"Certainly this was a matter which would naturally and reasonably influence the judgment of the insurer and which increased the risk of loss. (citing) Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 528, 194 S.W. 581, L.R.A.1917E, 554; Volunteer State Life Insurance Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270; Metropolitan Life Insurance Co. v. McGowan, 2 Tenn.App. 341; Norvill v. Mutual Benefit Health [& Accident] Association, 14 Tenn.App. 396; Robbins v. New York Life Ins. Co., 18 Tenn.App. 70, 72 S.W.2d 788; National Life and Accident Ins. Co. v. Lewis, 19 Tenn.App. 459, 89 S.W.2d 898; Little v. Washington National Ins. Co., 34 Tenn.App. 593, 241 S.W.2d 838.

The fact that no medical examination is required or made in issuance of industrial insurance policies, makes misrepresentations as to material matters more significant. Metropolitan Life Ins. Co. v. McGowan, supra, 2 Tenn.App. at p. 346. Although the policy in question here is not an industrial policy, we think the rule should be the same, since no medical examination was required or made." Jefferson Standard Life Ins. Co. v. Webb, supra, pp. 322, 323, 406 S.W.2d p. 742.

In his memorandum opinion, the Chancellor cited Industrial Life and Health Insurance Co. v. Trinkle, 185 Tenn. 434, 206 S.W.2d 414, but we distinguish the instant case from the Trinkle case, since in the Trinkle case the insurance policy was issued on the life of an infant who was born prematurely and who was sick in the hospital at the time of delivery of the policy. In that case, the child's parents told the insurance agents of such premature birth at the date of the application and also told the agents the child was sick when the policy was delivered.

In the case at bar there was no information of any kind communicated to the defendant which would cause the defendant or its agents to be aware that the insured had ever had tuberculosis.

The second assignment is sustained.

■ The Chancellor further held, in his memorandum opinion, that the defendant was estopped from asserting its claim of forfeiture of the policy, since it was put on notice of such facts as would require it to make further investigation and referred to the confidential report of American Services Bureau stating that the insured once had a back ailment. This conclusion of the Chancellor is assailed in the third assignment of error and we think this assignment is good.

Of course, it has been held in Life & Casualty Ins. Co. v. King, 137 Tenn. 685, 195 S.W. 585, that where an insurance company has information which, if pursued with reasonable diligence, would lead to a discovery of the true state of facts regarding the health of insured upon which it sought to base a forfeiture of the insurance policy, the Courts will raise an estoppel against the claim of forfeiture.

However, there is no evidence in the record, medical or otherwise, to justify a conclusion that pursuit of inquiry about a back ailment would lead to the discovery of the existence of tuberculosis.

In his memorandum opinion, the Chancellor concluded there was no proof to establish intent on the part of the insured to deceive the defendant by making a false answer to the question regarding tuberculosis.

It has been held by this Court in National Life and Accident Ins. Co. v. Lewis, 19 Tenn.App. 459, 89 S.W.2d 898, and in Jefferson Standard Life Insurance Co. v. Webb, supra, that misrepresentation which increased the risk of loss, will void the policy, whether made with actual intent to deceive, because of the following emphasized portion of Code Section 56-1103:

"No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, *or unless the matter represented increase the risk of loss.*" (Emphasis supplied.)

█ It was error for the trial Court to hold that in order to void the policy, such intent to deceive was necessary in this case and therefore, the defendant's first assignment of error is good and must be sustained.

█ The holding of the Chancellor, in his memorandum opinion, to the effect that the testimony of John Clay, the agent who received the application and sold the insurance policy, would have supported defendant's claim if Clay's testimony had been offered is assigned as error in the fifth assignment.

We do not find any evidence in the record which would justify the Chancellor's conclusion which is made the basis of this fifth assignment. If it should be assumed, for the sake of argument, that the check mark opposite the word "no" following the question about tuberculosis and certain other diseases, which is designated as question No. 10 in the application, was written and placed

there by the agent, it is undisputed that the insured signed the following printed language:

"Each of the undersigned declares that he has read the questions and answers contained herein, and that the answers are complete and true to the best of his knowledge and belief, and he offers them and the following agreements to the company as a consideration for the insurance applied for."

Since there is no evidence in the record to the contrary, we must conclusively presume that the insured provided the answer to the question about tuberculosis, regardless of who made the check mark opposite the answer.

The fifth assignment of error is sustained and we must likewise sustain the seventh assignment in which the defendant insists the evidence preponderates against the decree of the trial Court.

The sixth assignment, which is based upon the alleged error of the trial Court in excluding testimony of Owen C. Leslie, chief underwriter for Provident Life and Accident Insurance Company, is pretermitted, since it is not necessary for us to consider this assignment in view of our holding that the decree of the Chancellor must be reversed.

Assignments numbered one, two, three, four, five and seven are sustained and the decree of the trial Court reversed.

Since the premium has been refunded by the defendant to the holder of the note which was given by such pre-

mium, the suit is dismissed and all of the costs, including the costs of this appeal, will be paid by the complainant-appellant.

Shriver, P. J. (M.S.), and Todd, J., concur.