**AMERICAN NATIONAL INSURANCE COMPANY, Appellant,**

v.

**Adelia M. NAVARRETE, Appellee.**

**No. 08–87–00334–CV.**

Court of Appeals of Texas,
El Paso.

Aug. 17, 1988.

Rehearing Denied Sept. 7, 1988.

James M. Rush, McMahon, Tidwell, Hansen & Atkins, P.C., Odessa, Jerry D. Caddel, McMahon, Cox, Tidwell, McCoy, Hansen & Atkins, P.C., Odessa, for appellant.

806

Roddy L. Harrison, Pecos, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a judgment based upon jury findings, awarding actual and exemplary damages against a life insurance company for its failure to pay death benefits under a policy which it had issued. We reverse and remand.

On August 22, 1985, an agent for American National Insurance Company took an application for a joint whole life insurance policy on Miguel Navarrete and his wife, Adelia M. Navarrete. The application contained several questions which inquired if any proposed insured had certain physical problems and whether they had received treatment for certain health problems. The agent testified he checked the answers which Mr. and Mrs. Navarrete made orally to those questions. The application which Mr. and Mrs. Navarrete and the agent signed reflects those answers as follows:

9. Has any proposed Insured.                                           Yes  No
   (a) Any abnormality, deformity, disease or disorder or is any proposed Insured presently receiving treatment or taking medicine of any kind?  ☐ ☒
   (b) Ever had a surgical operation or been advised to have an operation which was not performed?  ☐ ☒
   (c) Ever had an x ray, electrocardiogram, blood or urine test or other laboratory tests? If "Yes," state why, when, where, and by whom.  ☐ ☒
   (d) Ever made claim for or received any Insurance benefit, compensation or pension, governmental or otherwise, on account of an injury or sickness?  ☐ ☒
   (e) Any Impairment of sight or hearing?  ☐ ☒
   (f) Ever been under observation or treatment in any hospital, sanitarium, clinic or rest home?  ☐ ☒
   (g) 1. Ever used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics, except as prescribed by a physician?  ☐ ☒
   2. Ever received counseling or treatment regarding the use of alcohol or drugs?  ☐ ☒
   (h) Ever had or been treated for high or low blood pressure, chest pain or for sugar in the urine; or for cancer in any form?  ☐ ☒

10. Consulted or been treated or examined by any physician or practitioner for any cause not previously mentioned in this application?  ☐ ☒

13. Are all proposed Insureds now in good health?  ☒ ☐

16. Answer if any proposed Insured is under 6 months of age.
    (a) Birth weight: ___ lb. ___ oz. ___
    (b) Was birth abnormal or premature?  ☐ ☒

17. Has any proposed Insured smoked any cigarettes in the past twelve months?  ☐ ☒
    If "Yes," Who? ___

Mrs. Navarrete testified that at the time the application was signed, she and her husband had both had surgical operations, both had laboratory tests, and both had been in a hospital for treatment, and they were both taking medication. She also testified that her husband told the agent that he was taking high blood pressure pills, that he told the agent he had some operations in a hospital, told him he had had an X ray or electrocardiogram, and told him that he had been treated for high blood pressure or chest pains. Neither Mr. nor Mrs. Navarrete could read or speak English when the application was signed.

A premium of $30.30 was paid when the application was taken on August 22, 1985. The application provides that the policy will not be effective until it is issued, delivered to the applicant and the full first premium paid, all during the lifetime and good health of the insureds. The policy was issued on November 1, 1985, to insure Mr. and Mrs. Navarrete for $9,263.00. It recites that the policy is issued in consideration of the application and of the payment of the specified premiums. The application was attached and made a part of the policy. The policy recites it shall be effective on the date of issue upon payment of the first premium and delivery during the joint lifetime and good health of the insureds.

Mr. Navarrete died on April 6, 1986. The death certificate shows the cause of death to be cardiorespiratory arrest and a ruptured blood vessel in the brain. Following his death, the joint policy was converted to an individual policy to cover the life of Mrs. Navarrete.

When American National refused to pay the claim under its policy, this suit was filed. In response to questions submitted, the jury found Mr. and Mrs. Navarrete made true oral answers to the agent on all of the questions in dispute under paragraph number thirteen of the application.

They also found the agent failed to truthfully write down the answers given on each question in dispute. (There was no dispute about 13(e), (f) or (g)). The jury failed to find that either the oral answers given or the answers as written were material to the risk of insurance. In answer to question 6–A, the jury found both of the Navarretes were in good health when the policy was issued. In answer to questions seven through ten, they found the company agent represented the policy would be in force on August 22, 1985, which induced the insureds to purchase the policy, and that such representation was relied upon by the Navarretes to their detriment and that the agent made such representation knowing it was false. In the next three questions, the jury found American National waited until after Mr. Navarrete died to make inquiry beyond the application as to the health of Mr. Navarrete, and that such failure was negligence and a proximate cause of the plaintiff's damages. In questions fourteen through seventeen, the jury found a company agent, who converted the joint policy to a single policy for Mrs. Navarrete, promised her on April 18, 1986, that the policy on Mr. Navarrete would be paid, that such promise was made to induce her to purchase a new policy, that she relied upon such promise to her detriment, and that the promise was made knowing it was false. The last two issues found $375,000.00 in actual damages and $125,000.00 in exemplary damages.

The Appellant presents thirteen points of error attacking the submission of various issues, the answers to those issues and the judgment based on those answers. We conclude that the appeal is controlled by Points of Error Nos. Eight and Nine where it is asserted the trial court erred in rendering judgment based on the answer to question 6–A because there was no evidence or insufficient evidence to support the answer that both Navarretes were in good health. The issue before us can be narrowed as to only the good health of Mr. Navarrete.

The courts of this state have continually recognized the validity of policy provisions which require that the insured be in good health or sound health when the policy is issued. *Washington v. Reliable Life Insurance Company*, 581 S.W.2d 153 (Tex. 1979); *Great American Reserve Insurance Company v. Britton*, 406 S.W.2d 901 (Tex.1966); *Lincoln Income Life Insurance Company v. Mayberry*, 162 Tex. 492, 347 S.W.2d 598 (1961).

In this case, the court defined the term as used in question 6–A as follows:

By "good health" is not meant perfect health nor absolute perfection, but is a state of health free from any disease or condition that affects the general soundness or healthfulness of the system seriously, that is, that the insured be not afflicted with a disease or condition of a substantial nature which affects the insured's general health or which materially increases the risk to be assumed by the insurer.

That definition is substantially in accordance with the definition approved in *Great American Reserve Insurance Company v. Britton*, and which was submitted in *Lincoln Income Life Insurance Company v. Mayberry*.

In passing on a no evidence point of error, we consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14 (Tex.1987); *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). In reviewing an insufficient evidence point, we consider all of the evidence including that which is contrary to the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). We also detail evidence relevant to the issue and how it greatly outweighs the evidence in support of the verdict. *Cropper v. Caterpillar Tractor Company*, 31 Tex.Sup.Ct.J. 459 (May 28, 1988); *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex.1986). We pass on the legal insufficiency point first. *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981).

The only evidence that Mr. Navarrete was in good health came in testimony

from his wife in answer to a question on cross-examination, as follows:

Q. (BY Mr. Caddel) Mrs. Navarrete, in August of 1985 was your husband in good health?

A. Other than having high blood pressure problems.

This answer is impliedly an affirmative response but with a qualification. Considering the implied "yes", then there is some evidence of good health. Under the proper standard, we may not consider evidence contrary to the verdict and; therefore, we disregard the subsequent condition on the answer. Thus, we conclude there is some evidence to support the jury's verdict and Point of Error No. Eight is overruled.

In passing on the insufficient evidence point, we look at the entire record including the evidence contrary to the verdict. Again, we review the testimony of Mrs. Navarrete. She said her husband carried his blood pressure pills with him all the time, that in May 1985, he had an angiogram in the hospital in Odessa, that in July 1985, her husband went to his doctor four times in six days with problems with his blood pressure, and that when her husband signed the insurance application he had been treated for chest pains and high blood pressure.

Mr. Israel Navarrete, the deceased's brother, when asked if his brother was in good health in August 1985, replied: "I would say he wasn't, no, sir."

Hospital records reflect that following a coronary arteriograph in May 1984, the medical findings were: (1) inferior wall myocardial infarction, recent, (2) mild coronary atherosclerosis and (3) possible coronary spasm or early cardiomyopathy. The record reflects the patient had a history of hypertension for five years. An X ray report in May 1984, reflected an impression of "cardiac enlargement, predominantly left ventricular and early congestive heart failure." A hospital report in 1984, by his family physician, showed a final diagnosis of angina pectoris and hypertension among other things. The hospital admission report in May 1984, reflected a chronic illness of high blood pressure. When Mr. Navar-

rete was hospitalized on the date of his death, his blood pressure was 280/100.

■ When the medical history is considered along with the brother's unqualified statement and the qualified statement of the widow, we conclude that there is insufficient evidence to support the jury's answer to question 6–A, and that the answer is against the great weight and preponderance of the evidence. Point of Error No. Nine is sustained.

■ Without a finding that the insured was in good health or that the company was estopped to assert that defense, the company was not obligated to pay the beneficiary the amount of the policy. *Washington v. Reliable Life Insurance Company; Lincoln Income Life Insurance Company v. Mayberry.* If it had no duty to pay, its failure to pay could not have resulted in the breach of any duty or obligation to the beneficiary. Further, since all answers on the application were negative, except as to "good health", the insurer had no duty to make further inquiry as to the health of the applicants. *Jefferson Standard Life Insurance Company v. Webb,* 56 Tenn.App. 314, 406 S.W.2d 738 (Ct.App.1966), *cert. denied; Curry v. Reserve Life Ins. Co.,* 43 So.2d 312 (La.Ct.App.1949).

Since the case must be remanded, we note that questions seven through ten were all immaterial since the policy was in fact issued during the lifetime of the insured. A misrepresentation as to when a policy would be in force would only be material if the insured died prior to the issuance of the policy.

Of a more serious nature to the entire case is the holding in *Odom v. Insurance Company of the State of Pennsylvania,* 455 S.W.2d 195 (Tex.1970), that where an application for insurance is attached to and made a part of the policy and is accepted and retained by the insured, the insured is conclusively presumed to have knowledge of its contents and to have ratified any false statements therein. That rule was applied to one policy which had the application attached to it in *Washington v. Reli-*

*able Life Insurance Company.* The two texts cited in the *Odom* footnote state that this rule is applicable even though the insured is illiterate or unable to read or write English. Appleman, *Insurance Law and Practice,* Volume 17, Section 9405, 46–48 (1981), and *Couch on Insurance 2d,* Volume 7, Section 35:213, 337 (1985).

■ We further note with regard to the answer to question nineteen, that exemplary damages may not be awarded as a result of ordinary negligent conduct but must be based upon gross negligence or wilful conduct, which issues were not submitted to the jury in this case. In *Nabours v. Longview Savings & Loan Association,* 700 S.W.2d 901 (Tex.1985), the Court said:

> Punitive damages are recoverable only after proof of a distinct, wilful tort. (Cases cited). This requirement applies equally to actions arising out of tort or contract, or those seeking equitable relief.

We need not pass on the other issues raised in the Appellant's brief. The judgment of the trial court is reversed, and the case is remanded to the trial court.

### OPINION ON MOTION FOR REHEARING

The Appellee, in her motion for rehearing, urges that we erred in holding that there was insufficient evidence to support the jury finding that Miguel Navarrete was in good health at the time of the issuance of the insurance policy. In reaching that decision, we considered all of the evidence set forth in the Appellee's motion for rehearing. While we recognize that the agent who took the application testified that Mr. Navarrete was able to get around fine, there was also evidence in the record that he had a bad limp. The Appellee testified that her husband had a limp that was very noticeable. We do not believe that any of that evidence was in any way related to the cause of death of Mr. Navarrete and; therefore, it was not included as part of the controlling facts in our original opinion. A review of all of the evidence including the testimony and exhibits and the findings in the medical records convince us that the jury finding that Mr. Navarrete was in good health when the policy was issued is against the great weight and preponderance of the evidence.

■ In a supplemental motion for rehearing, the Appellee urges, for the first time, that because of the jury's answers to questions seven through ten, the Appellant is estopped from asserting a defense of no coverage and no existing policy. First, we note that in the Appellee's thirteen page original petition there is no allegation of estoppel. Second, in the twenty-one reply points in the Appellee's brief filed in this case, there is no contention that the jury's answers to questions seven through ten estop the Appellant from raising the question of good health. Third, we note that counsel for the Appellee did not contend in oral argument that the jury's answers to any issues constituted an estoppel in this case. Finally, we note that estoppel is defensive in nature and may not be used to create liability where it does not otherwise exist. *Hruska v. First State Bank of Deanville,* 747 S.W.2d 783 (Tex.1988). Until the Appellee first established the good health of the deceased at the time the policy was issued, no liability ever existed on the policy issued by the Appellant.

The Appellee's motion for rehearing and supplemental motion for rehearing are overruled.